GEORGE F. FISHER, Appellant and Respondent, *v.* THE
METROPOLITAN ELEVATED RAILWAY COMPANY
and the MANHATTAN RAILWAY COMPANY, Appellants and Respondents.

*Railroad corporation — it may lease its road to another company — it is not liable for
the negligence of the lessee's servants — 1839, chap. 218 — punitive damages — when
they cannot be awarded against a corporation.*

Although a railroad corporation cannot, without the consent of the legislature,
lease its road to an individual, yet it may, under the authority conferred by
chapter 218 of 1839, lease its road to another railroad corporation.

*Abbott* v. *Johnstown, etc., Railroad Company* (80 N. Y., 27), distinguished; *Woodruff*
v. *Erie Railway Company* (25 Hun, 246); *Woodruff* v. *Erie Railway Company*
(93 N. Y., 609), followed

Where, under the authority conferred by this statute, a railroad corporation has
executed and delivered a lease of its road to another company, and the lessee
has taken possession of the road and is operating and managing it thereunder,
the lessor is not liable to a passenger thereon for injuries sustained by him by
reason of the negligent and wrongful acts of the lessee's servants.

Although a railroad company is liable to a passenger who has been injured by
negligent or willful acts done or omitted by its servants in the course of their
employment, to the extent of the actual injury sustained by him, yet it cannot
be held liable for punitive damages unless shown to have been itself guilty of
gross neglect or misconduct.

The verdict in this case reversed, because the charge of the judge, although
nominally withholding from the jury the right to award punitive damages,
in fact allowed them to award damages of that character.

APPEAL by the plaintiff from a judgment dismissing his complaint against the Metropolitan Elevated Railway Company, and by
the Manhattan Elevated Railway Company from a judgment in
favor of the plaintiff, recovered on a verdict, and from an order
denying a motion for a new trial made upon the minutes of the
justice before whom the action was tried.

*S. B. Chittenden, Jr.,* and *Joshua M. Fiero,* for the plaintiff.

*R. E. Deyo,* for the defendants.

DANIELS, J.:

The plaintiff took passage on a train of the Metropolitan Elevated
Railway Company late in the afternoon on the 5th of December,

1879, at the Franklin street station, designing to leave it on its arrival at the station on Twenty-third street. When the train arrived at the station, where the plaintiff went upon it, the cars were filled with passengers, who were also standing upon the forward platforms. The gate to the rear platform of the train was open and a person standing upon it, and the plaintiff, together with a lady accompanying him, went upon that platform. After the train was put in motion he discovered the door of the car to be locked, and was unable to obtain the attention of the brakeman to open it and allow him to enter the car. He proceeded upon the train in this manner until it arrived at Fourteenth street, where, it is claimed, he was observed by the brakeman, but who, it was alleged, carelessly and and intentionally avoided opening the door to allow him to enter the car. And that, in this manner, he was afterwards carried to the Forty-second street station, where he relieved himself from this situation by breaking the window of the car door and then passing into it through a side rear window opened by a passenger. This was the first cause of action, for which damages were claimed by him upon the trial.

As he left the train it was stated by him that he was seized by a person who was in fact in the employment of the railway company, and delivered into the custody of a policeman for disorderly conduct. The person so alleged to have seized him was not at the time on duty, and the main ground relied upon for a recovery on account of this seizure was that the servants, or officers then on duty, carelessly and negligently omitted to interfere for his protection and security, while he was leaving the car and passing over the platform to the stairs terminating in the street.

It was made to appear on behalf of the defendants that, on or about the 5th day of June, in the year 1879, the Metropolitan Railway Company leased its road to the Manhattan Railway Company for the period of 999 years, and at the time in controversy the train was run, managed and controlled exclusively by the latter company. For that reason the complaint of the plaintiff against the Metropolitan Elevated Railway Company was dismissed, and that dismissal seems to have been justified by the facts, although the plaintiff, at the time, had received a ticket issued by the Metropolitan Railway Company, but without any authority whatever by

means of it to bind the company which had issued it. The facts were that the Metropolitan Elevated Railway Company had withdrawn entirely from the operation of its business as a railway company after the execution and delivery of the lease to the other defendant. It interfered in no manner with the making up or management of the trains, and was not represented by any person engaged or employed in the business of the railway. The persons having charge of the railway and of its trains and carrying on its business were the servants, officers and agents of the Manhattan Railway Company. They had entire and exclusive control.

It has been urged that the Metropolitan Railway Company had no legal authority to execute and deliver this lease of its railway to the Manhattan Railway Company, and *Abbott* v. *Johnstown, etc., Railroad Company* (80 N. Y., 27) is relied upon in support of this position. But in that case the lease was made to an individual, and it was therefore held to be inoperative, and that the company still remained liable to persons injured in the course of its management, notwithstanding the lease. But by chapter 218 of the Laws of 1839, it was made lawful for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract. This act did not authorize the leasing by a railroad company of its road to an individual, but it has been held to authorize such a lease from one railroad company to another. That subject was considered in *Woodruff* v. *Erie Railway Company* (25 Hun, 246), where this distinction was maintained, and it was there held incidentally that the legislature had authorized the leasing of a railroad by one railroad company to another. This case, it is true, was afterwards reversed, but the reversal did not draw in question the correctness of this construction of the statute. But, on the contrary, it was again repeated and approved by the court. (*Woodruff* v. *Erie R. R. Co.*, 93 N. Y., 609.) Under this authority it is regarded as having been conclusively settled by the laws of this State, that one railroad company may lease its road, as this railroad was leased, to another. And where such a lease has been executed and delivered and the lessee has taken possession of the leasehold property, and afterwards operates it as its sole proprietor, as it well might do under the terms of

this lease, there the lessor cannot be held liable to persons having causes of action of this description. To render the corporation liable the law requires that the relation of principal and agent, or master and servant, shall appear to exist between the person whose wrongful act is complained of, and the corporation proceeded against. A party injured by the misconduct of another is limited in his right to redress to the person or persons causing the injury, unless the fact can be established that these persons maintained the relation of servants, or agents, to another party or corporation. (*Milligan* v. *Wedge*, 12 Ad. & E., 737; *Rapson* v. *Cubitt*, 9 Mees. & W., 710.) The persons whose acts were relied upon as wrongful in support of the action did not maintain this relation of servants, or agents, to the Metropolitan Elevated Railway Company. And for that reason this company was not responsible for the consequences of what they omitted to do for the plaintiff. The case of *Railroad Co.* v. *Brown* (17 Wall., 445), is in no way inconsistent with this conclusion. For it appeared there that the persons in charge of and operating the railroad were still, as a matter of fact, in part at least, in the service of the company. They were its servants to that extent, and it was liable for the consequences of their failure to perform their duties. And what was said in the course of the opinion is to be regarded as subordinate to this state of facts. The judgment dismissing the complaint as to the Metropolitan Railway Company was accordingly right and it should be affirmed.

Both the person whose omission to act on board of the train, and the persons in charge of the station and upon the platform, who failed to interfere in the plaintiff's behalf for his protection as he was leaving the train, were in the employment of the Manhattan Railway Company, as lessee under this lease. And whatever liability was created by the facts, was, so far as this action proceeded upon it, the liability of this company. The persons in its employment were bound to make all reasonable and proper exertions, when his situation was discovered, to relieve the plaintiff from his position upon the rear platform of the car, and permit him to enter the car itself. And when he left the train, as he did at the station on Forty-second street, they were likewise legally bound to afford him all the protection and assistance which they reasonably could for safely and securely passing from the train into the street.

If either failed in this respect, and an injury was caused to him by such failure, then the corporation managing and operating the railway became liable to him for such a measure of redress as would compensate him for all the injury he had in fact received. It has been very correctly held that the rule is of universal application whether the act be one of omission or commission, whether negligent, fraudulent or deceitful, that the master shall be civilly liable when the act is that of his servant. "And it makes no difference that the master did not authorize, or even know of the servant's act, or neglect, or even if he disapproved, or forbade it, he is equally liable if the act be done in the course of his servant's employment." (*Philadelphia, etc., R. R. Co.* v. *Derby,* 14 How. [U. S.], 468.) The same subject was again examined in *Stewart* v. *Brooklyn, etc., Railroad Company* (90 N. Y., 588), where, after a very complete consideration of the authorities, this measure of liability was held to be supported by them. And so it was in *Ramsden* v. *Boston and Albany Railroad Company* (104 Mass., 117). And even though the act complained of may be willful and malicious on the part of the servant, as long as it is performed in the course of his employment, the master or employer will be held legally liable to make compensation to the party injured by it.

But while the employer is rendered liable to the person who has been injured by his or its servant or agent, in the course or business of the employment, the liability extends so far only as to compensate the person injured for the actual injury sustained by him. To render the employer liable to a greater extent requires proof of positive misconduct on his or its part. Where no such proof shall be produced, the employer is liable to compensate the party for his injury, but his liability extends no farther. This restriction of the employer's liability was considered to be settled in *Cleghorn* v. *New York Central, etc., Railroad Company* (56 N. Y., 44), where it was said that, "for injuries by the negligence of a servant, while engaged in the business of the master within the scope of his employment, the latter is liable for compensatory damages. But for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established by showing that the act of the servant was authorized, or ratified, or that

the master employed or retained the servant knowing that he was incompetent, or from bad habits unfit for the position he occupied. Something more than ordinary negligence is requisite. It must be reckless and of a criminal nature, and clearly established corporations may incur this liability as well as private persons." (*Id.*, 47, 48.) The same point was also considered in *Townsend* v. *New York Central, etc., Railroad Company* (id., 295), and *Caldwell* v. *New Jersey Steamboat Company* (47 id., 282), where it was subjected to the same restriction. (Id., 296.) And in *Brooks* v. *New York and Greenwood Lake Railroad Company* (30 Hun, 47). And what was said in *Millard* v. *Brown* (35 N. Y., 297), and *Milwaukee Railroad Company* v. *Arms* (91 U. S., 489, 495), must be considered as subordinate to this qualification.

While the Manhattan Elevated Railway Company may have been legally held liable to the plaintiff, and bound to compensate him for the injury received by him in consequence of the negligent omission of the persons in its employment, to perform their duties in his behalf, the liability cannot be extended beyond the obligation of making actual compensation, for no misconduct on the part of the company itself was proved at the trial. It was not shown that it had in any respect been careless or remiss in the employment of the brakeman, or any other person in charge of the train, or acting in its employment at the station where the plaintiff left it. It accordingly was not liable for any act or neglect of its own, but its liability was constructive, wholly arising out of the omission of its servants or agents to act when the emergencies presented themselves requiring action on their part, in behalf of the passenger to secure his safety, promote his comfort, and afterwards protect him from molestation or interference by the wrongful acts of others, while he was endeavoring to leave the train and pass through the station into the street. But this rule was not observed in the submission of the case to the jury. It is true that the court, as to both of the alleged causes of action, disclaimed the design of permitting the jury to give, by their verdict, what are known as punitive or exemplary damages. But as the case was submitted to them they were left at liberty to add such damages to the actual compensation of the plaintiff without characterizing them as such. They were instructed if they thought "that the conduct of the

defendants' servants was willful, if they purposely kept that man cooped up there, when they might readily have let him in or out, and they did so in a spirit of willfulness, that spirit, which, if you believe the plaintiff's evidence might have been expressed by the smile upon the face of one of the defendants' employees, when he looked back and saw the situation of affairs, then you may award something more than mere compensation, something to indicate to these defendants that passengers are not to be inconvenienced and are not to have their rights trampled upon in any such spirit. In other words, to teach them a little better behavior in the future." They were further directed that if they believed nothing more than negligence had been established against the defendant, then they were to give him some small compensation for the inconvenience he suffered. "But," it was added, "if you think that the plaintiff was kept where he was in a willful spirit you may add such further sum, always, however, a fair, reasonable and moderate sum, as would rebuke in a proper way any such misconduct." In directing the jury as to the damages which might be given for the assault upon the plaintiff they were, in the first instance, restrained to such damages as would be fair and moderate under the circumstances. But this direction was afterwards enlarged by the statement that " if the jury shall find that the elements of willfulness or malice entered into the arrest, then, but only then, they may award damages commensurate to that state of things." And as to both causes of action the jury were generally and correctly directed to compensate the plaintiff for "the inconvenience, the outrage, the mental suffering, all these things are to be considered and a fair measure of compensation awarded, within the discretion of the jury, but always within reasonable limits." But the other and additional directions placed the jury at liberty to add to the damages which they might find would compensate the plaintiff for the injuries received by him, such further damages as would teach the defendant a little better behavior in the future and rebuke in a proper way misconduct of this description. But while they were not denominated exemplary or punitive damages they were strictly of that character. For they were damages exceeding those required for the actual compensation of the plaintiff for the injuries sustained by him, and which were subjects of complaint

upon the trial. These directions, under the rule established by the authorities, left the jury too much at liberty in the case. They were not restricted, as the law required them to be, to the actual damages sustained, which were all that the plaintiff was entitled to recover under the evidence, but were placed at liberty to add further damages by way of restraining misconduct on the part of the servants, agents or officers of the railway company in the future. And those damages the jury were not legally allowed to give. That they availed themselves of this liberty is reasonably clear from their verdict, for as to the first cause of action they found for the plaintiff for the sum of $2,500, and, as to the second, the sum of $4,000, making a total of $6,500.

It has not been considered that the plaintiff was legally chargeable with want of proper care on his part in going upon the rear platform of the train, or in not leaving it, as he afterwards might have done, at stations at which the train stopped before its arrival at the Eighth street station. He found the gate open at the platform. How it had been opened did not appear, but the fact that it was in that condition was in the nature of an invitation to passengers to take the train by that avenue; so much so certainly as not to render the plaintiff legally chargeable with negligence from the mere circumstance that he placed himself in the manner in which he did upon the rear platform, and afterwards remained there until he was able to release himself from this position. It is as to the subject of damages, and that alone, that error seems to have intervened in the course of the trial. And because of misdirections given to the jury concerning them, the judgment and order should be reversed and a new trial directed, with costs to abide the event, while the judgment in favor of the other defendant should be affirmed.

Davis, P. J., and Brady, J., concurred.

Judgment and order as to Manhattan Railway reversed and new trial directed, with costs to abide event; judgment in favor of Metropolitan Railway Company affirmed.