Van Brunt, P. J.
The. evidence in this case does not seem to materially differ from that which was presented by the record upon the last trial of this ease, upon the appeal from the judgment, in which this court held that there was sufficient evidence upon which the jury could find that the floor-walker in the arrest and searching of the plaintiff acted within the scope of his authority, and it would not be necessary upon this appeal to do more than to refer to the opinion previously announced, in order to sustain the judgment, were it not for the apparent failure to comprehend *179 the evidence, which seems to be indulged in by the counsel for appellant.
In discussing the previous opinion of the General Term, it is insisted that it does not apply, because the record on the present appeal discloses absolutely nothing in the nature of instructions that could possibly justify any employe of the defendants in dragging into their store a woman who had been arrested a block away and forcibly taking her to a private room and subjecting her to a search.
We have searched the record in vain to find any evidence which in the slightest degree justifies the foregoing statement. The whole argument is based upon the assumption that the plaintiff was arrested by the policeman in the street and dragged into defendants’ store, and that such arrest was in no way requested by defendants’ agents. The evidence in the case, however, discloses that the plaintiff was not arrested in the street, and that no force whatever was applied to her, either in respect to her movements or in respect to her person, except while she was in or upon defendants’ premises. It is true that the policeman accosted her in the street, but he simply asked her to go back to the store. She did not refuse, and went voluntarily, and had no idea whatever that she was the subject of restraint, or that she was in the custody of an officer of the law. Upon her arrival at the store, the plaintiff went with the policeman and the floor-walker over to a saleswoman by the name of Clark, who was asked: “ Is this the woman who stole the corset?” The answer was : “I didn’t see that woman steal a corset; I thought she was looking at bracelets.” The man, who subsequently turned out to be a policeman, looked at the woman and then at the floor-walker, Hr. Graff, and Graff said : “ Take her up stairs ; fetch her along.” and she was taken up-stairs and searched by these two men, who, after finding nothing upon her, permitted her to go.
The evidence in this case shows that Graff’s duties were those of a floor-walker; that he was to look after the employees and to look after thieves; that the defendants *180 exhibited their goods in such a way as to attract shop-lifters, and that it was the duty of this floor-walker to arrest persons-caught in shop lifting.
It is true that Mr. Moore, the superintendent, swears that his duty was, when a person was caught shop-lifting, to report to him, which is absurd upon its face, as while a report was made to him the shop-lifter would have ample time to escape. But he also swears, “We never apprehend a person on suspicion.” And when asked who he meant by “ we,” he said himself and his subordinates. From which the jury had a clear right to infer that, notwithstanding Mr. Moore’s testimony on the subject of instructions, it was the understanding that persons were to be arrested by the floorwalkers who were caught in the act of shop-lifting.
It is clear that they had the right to arrest, and if they arrested upon insufficient evidence, or made a mistake in their conclusions from what they saw or heard, the defend • ants can not escape responsibility. The floor-walker evidently had the right to arrest and apprehend thieves, and under that authority, if he apprehended an innocent person his employers are necessarily responsible.
They cannot confer such an authority upon the employee, and claim the benefits of his action when he acts advisedly, and absolve themselves from all risk when he acts on insufficient evidence.
It seems from the facts, to which attention has already been called, that the jury had ample justification in concluding that, although there was an attempt to disguise the authority of these floor-walkers in reference to the powers which they had for apprehending those caught in the commission of crime, it was a mere subterfuge, and that the understanding of the defendants was that their employees should exercise this extreme power, and in those cases where they were justified in so doing the authority was to be deemed conferred, but in those cases in which they acted hastily the sole authority was vested in the general superin *181 tendent, and therefore they were not responsible for the ill-advised action of the floor-walker.
There is another view to be taken of this case, which seems to be in consonance with the present line of decisions in regard to the principal being liable for the acts of his subordinates.
It was long held by the courts that a common carrier was not responsible for a willful assault by one of its employees upon a passenger. This rule, however, has been abrogated upon the theory that the common carrier invites the passenger to subject himself to the protection and care of the employe of the corporation, and under these circumstances the common carriers should be responsible for all the acts of the subordinates toward the passenger while under his custody and control.
In like manner, the storekeeper invites the public to enter his premises and to subject themselves to the custody and control of his subordinates, and by parity of reasoning he should be held responsible for the brutalities of such subordinates, even where they are not committed within the ■strict line of his employment. There seems to be no distinction in principle between the cases.
The judgment should be affirmed, with costs.
Daniels and Brady, JJ., concurred.
Note on Liabilities foe Injuries to the Person as AFFECTED BY THE FACT THAT THE INJURED PERSON WAS in Defendant’s care, or by invitation on his premises; or the injury was by fault of Defendant’s EMPLOYEE.
I. Duty of care.] Formerly the courts were accustomed to ■determine the questions of liability for negligence, according to a test drawn from a conventional and artificial classification ■of negligence into three grades, as “gross,” “ ordinary ” and “ slight,” corresponding to three equally rude distinctions in the duty of care. Perhaps the latest recognition of these distinctions is that to be found in Mark v. Hudson River Bridge Co., 103 N. Y. 28, 35 ; but they have now, however, *182 practically disappeared both from arguments and opinions in our courts.
In place of these discarded tests the law now looks to the relation between the parties, and inquires for the degree of care which that relation rendered it incumbent upon the defendant to exercise, and the degree of responsibility for the conduct of his subordinates which common usages and public policy render it just to impose in the case of that relation.
It will be seen from the cases below stated that an important element in establishing an enhanced duty of care consists in the fact that the person injured was in charge of the defendant or was on his premises by his invitation express or implied ; and that a very different rule of liability applies when he was there only by sufferance though not as a trespasser; and a different one still when he was there as a trespasser.
The significance of the case in the text, considered in this, light, is in its applying to the relation of shop-keeper and customer substantially the same rule of care, and consequently the same test of liability for wrong, which the law has long applied to carriers. It will readily bo seen, on looking at the cases in the note below, that the same suggestion would be equally applicable to several other classes of relations, although in perhaps a different degree (See cases 1-18).
II. Modified duty in case of tenancy. J Obviously an important modification of the liability of the owner of premises-for injury to those coming thereon may arise when the owner was not in actual possession, but the premises were in the actual possession of a tenant. For a long time the courts held that the liability to third persons was generally that of the tenant, and that if the premises were in good condition when the-landlord gave possession to the tenant, the stipulations between-them binding the former to keep them in good condition would not cast on him a duty toward third persons, on which ■ they could maintain an action. But recent cases have resulted in the general rule that,—“ The owner is responsible if he creates a nuisance and maintains it; if he creates a nuisance and then demises the land with the nuisance thereon, although he is out of occupation ; if the nuisance was erected on the-land by a prior owner) or by a stranger, and he knowingly maintains it; if he has demised premises and covenanted to keep them in repair and omits to repair and thus they become a nuisance; if he demises premises to be used as a nuisance, or for a business, or in a way so that they will necessarly become-a nuisance/' “ In all such cases ” says Judge Earl in Ahern v. Steele, 115 N. Y. 203. “I believe there is now no dispute that the owner would be liable. But an owner who has demised premises for a term during which they become, ruinous, and *183 thus a nuisance, is not responsible for the nuisance unless he has covenanted to repair.”
The cases in this state in which a landlord has been held liable in ail action in tort for injuries sustained by his tenant or a third person lawfully upon the premises by reason of the dangerous condition thereof, may be divided generally into three heads.
1. Where he has leased portions of the premises to several tenants as offices or apartments, retaining other portions . thereof under his own control for general use of all the tenants, as the halls, stairways, etc. (cases 30-35).
2. Where he has rented the premises with a covenant to keep in repair, and the injuries have been sustained by the tenant or a third person lawfully upon the premises through his omission to make needed repairs after proper notice and opportunity (eases 36, etc.).
3. Where he has leased premises upon which there existed a nuisance created by him or of which he had knowledge.
Relation betiueen employe’s act or neglect and Ms service.] An element of equally frequent importance in cases of negligent or wilful injuries is the question where the line is to be drawn between those acts of an employee for which he alone and not his employer is responsible, and those for which his employer is equally responsible. A few years ago it was almost universally held in this country that an act of the employee the motive of which appeared to be his own malice, did not render the employer liable even though done within the scope of the employment; but all the authorities which sanction that rule are now deemed in so far overruled ; and in respect to the question of the right of action, the motive of the servaut is now immaterial, and even the fact that the employer gave proper instruction and that the act was in direct violation of those instructions does not shelter the employees. The only question is, where the line is to be drawn between acts so related to the employment that it is just to hold the employer liable, and acts so disconnected from it that the employee alone should be liable.
Recent cases to which the reader will look for authority on this question, a convenient number of which are briefly stated below, differ in a way we may best indicate by contrasting two characteristic phrases; some say it is only when the act was “ within the scope of the employment ” that the master is liable ; others that it is enough that it was “ in the course of the employment.” The principle now recognized is, that while the employee is acting in the course of his employment, the employer is liable' even though the act was without the scope of the employment, that is to say unauthorized.
*184 And a number of cases go so far as to hold (and it seems justly) that if it was done in the apparent course of his employment and with the implements and the facilities of the employer’s place and premises, the employer is liable notwithstanding that the act may have been in a service not stipulated for by the contract of employment, or during hours when the contract of employment did not require any service. In other words, the liability of the principal is not, as in the case of agency, tested by the' scope of employment but by the course of service.
Notes op Cases.
The following typical cases selected from a large number of recent decisions will afford sufficient illustration of these distinctions, and adequate clue to other earlier authorities.

Notes of Gases.

I. Duty of cake on the part of owner or employer,
II. Duty in case of tenancy.
1. Gases where owner let part of the premises.
2. Oases where owner covenanted to repair.
3. Oases where owner let dangerous premises.
I. Duty of care on the part of owner or employer.
1. Carrier's invitation to station. Bennett v. Railroad Co., 102 U. S. 577. Action to recover damages for personal injuries alleged to have resulted from negligence or want of proper care on the part of the agents or servants of defendant, a company transporting freight and passengers for hire, whereby certain hatch holes were left open in a depot floor, which was the only convenient way to the company’s wharf boat, and the plaintiff fell in.—Neld, that defendant was liable; that the owner or occupant of land who induces or leads others to come upon it for a lawful purpose is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist, without giving timely notice thereof to them or the public.
2. Atchison, etc. R. R. Co. v. Johns, 36 Kan. 769. (One going into station to see friends depart).
3. St. Louis, etc. R. R. Co. v. Fairbairn, (Ark.) 4 South W. Rep. 50.
*185 (One entering station to read notice required by law to be there posted, and in which he had an interest.)
4. Heinlein v. Boston & Prov. R. R. Co. (Mass. 1888) 16 North E. Rep. 698.
Intending passenger who after finding that the last train had gone, lingered in the waiting-room expecting to leave it to take another conveyance, and who was injured on finally leaving.—Held not there by invitation at the time of injury.
5. —to enter car.] The stoppage of a railroad train at a regular station, constitutes an invitation to the public to take passage thereon. Werle v. Long Island Railroad Company, 98 N. Y. 650.
6. So an open gate to the platform of a train on an elevated railroad is in the nature of an invitation to the passenger to take the train by that avenue. Fisher v. Metropolitan R. Co., 34 Hun, 433.
T. A person, who, in an orderly manner, attempts to enter a street car as a passenger, is not to be regarded as a trespasser until he refuses te pay the required fare. Butler v. Glens Falls, Sandy Hill and Fort Edward Street R. R. Co., 17 State Rep. 565.
8. Passage to reach business office.] Chapman v. Rothwell, 1 El. B. & E. 168.
The declaration alleged that the defendant was in possession and occupation of a brewery, office and passage leading thereto from the public street, used by him for the reception of customers and others in his trade and business as a brewer. The passage was the usual and ordinary means of ingress and egress to and from the office, from and to the public street. The defendant negligently permitted a trap-door of the passage to remain open, without being properly guarded and lighted. The plaintiff's wife had been to the brewery office as a customer in the defendant’s business, and was walking along to passage on her return to the public street, when she fell through the trap-door and was injured and killed. Upon the argument, counsel for defendant insisted that no facts appeared showing it to be the duty of the defendant to keep the trap-door closed.—Held, on demurrer, that the duty of defendant and breach sufficiently appeared.
9. Pierce v. Whitcomb, 48 Vt. 127. (One entering as by invitation, and wandering about from curiosity).
10. Driveway to enter warehouse.] Nane v. Flack, 90 Ind. 205.
Action for personal injuries by reason of defendant’s defective premises. The proprietor of a warehouse maintained a driveway for the use of customers bringing him grain. There was a defect in it, and plain *186 tiff, who was bringing a load of grain to defendant, drove into it, the driveway being dark.—Held, that defendant was liable.
11. Ballroom in hotel.] Camp v. Wood, 76 N. Y. 92.
In an action to recover damages for injuries sustained by plaintiff in falling from a piazza in front of defendant’s inn, it appeared that defendant had let a hall on the third floor for a dance, which plaintiff attended; upon starting home, plaintiff came down one flight, and went out a door on the second floor opening on the piazza (thinking it was-the street door), walked off the piazza, to which there was no railing, and fell to the ground. The night was dark and the door was open.
Held, that by letting this hall for public purposes, defendant held out to the public that it was safe ; and he was bound to exercise proper care in providing safe arrangements for entrance and departure to those invited to the hall ; and that the question whether there was a breach of this duty, and also the question whether plaintiff was in such a state of intoxication that it contributed to the injury, were properly submitted to the jury.
12. Fair building.] Latham v. Roach, 72 Ill. 179.
Action to recover damages for injuries sustained by plaintiff in consequence of the falling of an amphitheatre during the holding of a fair.— Held, that individuals who hold a fair, and erect structures for the use of their patrons, are liable for any injury such patrons may receive by the breaking down or falling of such structures, if caused by the negligent or unskillful manner of their construction.
13. Brown r. South Kennebec Agricul. Soc., 47 Maine, 275.
Action for damages alleged to have been sustained by the falling of a portion of a building owned and used by defendants upon their fair grounds, to the injury of plaintiff, who was a spectator present at the fair, having paid the admission fee.—-Held, that the defendant aggregate corporation was, like an individual, responsible for injuries resulting from a want of ordinary care and foresight; but the liability is corporate, to satisfy which only corporate property can be levied upon.
14. Shooting range.] Conradt v. Clauve, 93 Ind. 476.
Proprietors of a fair ground, charging for admission, allotted a portion of the grounds for target-shooting, but gave no notice thereof; and plaintiff’s horse, hitched where others were, was shot.—Held, that the proprietors of the fair were liable.
15. Ohurch edifice.] Davis v. Central Congregational Society, 129 Mass. 367. Tort for personal injuries sustained by falling over a wall on defendant’s premises. Defendant, a religious society, gave notice of a meeting to be held at its house of worship, and invited the *187 members of other societies to attend.—SéZíf, that plaintiff, who was a member of a church so invited, while on the land of the society, was not a mere licensee ; and he could maintain an action against the society for a personal injury sustained, while in the exercise of due care, from the dangerous condition of defendant’s premises.
16. Inviting vessel to approach wharf.] Carleton v. Franconia Iron, etc. Co., 99 Mass. 216.
The owner of a wharf procured a vessel to bring a cargo to it, and suffered her to be placed there, at high water, over a rock sunk in an adjoining dock. Of the danger from the rock he had long been aware, but gave no notice thereof to the owners of the vessel. Without negligence on their part, the vessel settled down upon the rock, with the ebb of the tide, and was bilged by it.—Held, that he was liable, whether or not he owned the soil of the dock, and whether or not his wharf was a public place. The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land, or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of.
17. Newall v. Bartlett, 114 N. Y. 399.
One coming on a wharf or pier to assist in the carrying of baggage, etc., to a vessel there moored, is deemed to be there byinvitation of the owner of the wharf.
18. Scaffold to accommodate workmen.] Coughtry v. Globe Woolen Co., 56 N. Y. 124.
Defendant contracted with the employers of plaintiff’s intestate to put a cornice on its mill, defendant to erect any scaffolding required for that purpose. Plaintiff’s intestate was killed by the fall of such scaffold erected by defendant. In an action to recover damages, plaintiff was non-suited, upon the ground that defendant owed no duty to deceased in respect to the construction of the scaffold.—Held error; that the owner was liable for the injury of persons lawfully on the premises, by his permission or invitation; that the scaffold being erected by defendant upon its own premises for the express purpose of accommodating the workman, a duty was imposed upon it toward them to use proper diligence in constructing and maintaining the structure; and that this duty existed, independently of the contract.
19. Prisoner.] Hartwig v. Bay State Shoe & L. Co., 43 Hun, 425.
Prisoner laboring under contractor for prison labor, and injured by machine, sued the contractor. The contract of defendant with the *188 prison authorities bound defendant to furnish “ all the tools, machinery and. stock necessary.” Action sustained. The court says: “ While the usual relation of master and servant did not exist, because the labor furnished was compulsory, the defendant must be held to have owed a duty to the convict in respect to the machinery to be furnished for the purpose of the work. This follows from the covenant itself. A contract for machinery carries with it an obligation to furnish machinery fitted to and sufficient for the work, and that it shall be kept in constant repair. The contract, it is true, was with the county of Kings, but the convict was essentially a servant of the defendant. By his crime he lost the power over his own freedom to contract and labor, and his services were let out to defendant as minors and apprentices are let out, by the authority of a temporary superior. He was defendant’s workman, though his wages went to the county of Kings.”
[For the limits of disciplinary treatment by jailor, see Re Birdsong, 4 Law Rep. An. 628, sustaining proceedings in contempt.]
20. Mere license.] Barry v. N. Y. Central, etc., R. R Co., 92 N. Y. 289.
Where the public, for a series of years, had been in the habit of crossing the railroad.—field, that the acquiescence of the defendant in the public use amounted to a license or permission to all persons to cross at that point, and imposed the duty upon it, as to all persons so crossing, to exercise reasonable care in the movement of its trains so as to protect them from injury. Followed in Byrne v. N. Y. Centr., etc., R. R. Co., 104 N. Y. 362, 366, where the court says “ We think that case, notwithstanding the criticism of the learned counsel for the defendant in this case, is in entire harmony with the previous cases of Nicholson v. Erie Railw. Co., 41 N. Y. 525, and Sutton v. N. Y. Centr. etc. R. R. Co., 66 Id. 243. In the three cases the distinction between active negligence causing an injury, and mere passive negligence, was clearly pointed out.”
21. Splittorf v. State of N. Y., 108 N. Y. 205.
The owner of premises owes no duty of active diligence to one going thereon either with or without license and merely for his own convenience ; and is not liable for injuries resulting to such a person from omission to keep a structure thereon in repair. Hence the State (under statutes rendering it liable for negligence as a private corporation) is not liable for an injury sustained by one crossing a bridge over a State canal, for it owes no duty to the public, at least except to those navigating the canal, to keep such a bridge in repair and fastened.
S. P. Cusick v. Adams, 115 N. Y. 55 (Bridge wholly on private premises, but connecting them with highway).
*189 22. Matthews v. Bonsee, N. Y. 1888, 16 Atl. 195.
Holding that an allegation that plaintiff “ was lawfully on defendant’s premises,” though enough to show the right of a license is bad on demurrer when used in a complaint in which it is necessary to show that defendant owed any duty to plaintiff.
23. Volunteer.] Larmore v. Crown Point Iron Co., 101N. Y. 391.
One going upon business premises to seek employment in the business not a licensee within the rule of protection.
24. Employee of contractor for repairs.] Olive v. Whitney Marble Co., 103 N. Y. 301.
One coming on the premises to make the repairs, the want of which repairs caused the injury, assumed the risk, and the owner is not liable to him.
25. Entering streets laid out by land owners.] People v. Moore, 50 Hun, 356 ; s. c., 20 State Rep. 1; 3 N. Y. Sapp. 159.
A corporation which has erected upon its own lands factories and tenements for its employees, laying out open roads or street connecting such tenements with the public highway, cannot, by reserving the legal title to such roads and streets, prevent the members of the community from purchasing supplies of tradesmen not designated by it, nor prevent such tradesmen from entering upon such streets to deliver wares so bought. Such tradesmen’s act in entering upon the road for such purpose is not a trespass [Citing Munn v. Illinois, 94 U. S. 113].
Landon, J., said : To the extent of this public use the company subjected its private property to the law which regulates public rights (Munn v. Illinois, 94 U. S. 113). No doubt it can depopulate its village and restore its lands to the solitude of its exclusive private dominion; but as long as it enjoys the benefits of public association and communication it must accept the burdens necessarily and properly incident to them.
26. One on train without invitation.] Morris v. Brown, 7 Am. St. Rep. 751, 757; s. c. 111 N. Y. 318.
Held that a contractor was not liable for injuries to an engineer inspecting the tunnel being built, when the engineer without invitation rode into the tunnel on a car used to carry stone and other material, and through the negligence of a servant was thrown off and killed, even though the contractor had agreed to furnish facilities for the inspection of the tunnel. The court said that since the contractor gave the engineer no permission to use the car in entering the shaft, and owed him no duty in that respect, the engineer voluntarily assumed the risk. Beck v. Carter, 68 N. Y. 283; 23 Am. Rep. 175, was examined and distinguished on the ground of express or implied *190 invitation; and Sutton v. N. Y. C. R. R. Co., 66 N. Y. 243, and Eaton v. D. L. & W. R. R. Co., 67 Id. 382; 15 Am. Rep. 513, were examined and approved as supporting the court’s view of the case at hand.
27. Invitation by employee, contrary to employer's orders.] Cauiff v. Blanchard Nav. Co., 33 Northwest 744.
A ship-keeper of a vessel laid up for the winter, having positive orders from the owner not to allow any one on board without a written permit, invited on board a person who fell through an open hatchway and was injured.—Held, that the owner was not liable; negligence not being imputable to him in authorizing the hatch to be left open and unguarded, he owing no duty to plaintiff in the premises, and it being immaterial that plaintiff supposed that the hatch would be covered.
28. Stringer v. Mo. Pac. R. Co. 96 Mo. 299.
Action for damages for personal injuries. Plaintiff, under the implied permission or invitation of a brakeman, was riding on defendant’s engine when it jumped the track. It appeared that he had no business there, and also that the engineer was reckless.—Held, that the company was not liable, and that a judgment against them should be set aside.
Note.—Appended to Eckerson v. Crippen, 1 Law. Rep. Ann. 487, s. c., 110 N. Y. 585, is a note on leave and license to enter on real property, treating the subject under the following heads : definition; license by grant; prescriptive right; abandonment of right; protection by license; revocation of license.
29. Trespasser.] Carter v. R. R. Co., 98 Ind. 552.
Suit for damages to personal injuries. Appeal from an order sustaining a demurrer to the complaint.
The plaintiff was a trespasser upon a switching engine of defendants, used to place cars, from which he was thrown while the train was running at a high rate of speed.—Held, that the servants had implied authority from the company to remove trespassers, but that the company was liable because of the reckless manner of doing it.
II. Duty of cabe in case of tenancy.
30. Gases where owner let part of the premises.] Eagle v. Swayze, 2 Daly, 140.
Action by tenant against landlord for injuries to plaintiff’s stove and furniture sustained by the falling of a chimney which was out of repair, defendant’s attention having been called to its ruinous condition and she having promised to have it repaired.—Held, that a tenant from year to year of part of a dwelling house is under no obligation to *191 make repairs of so general, substantial and lasting a nature as the re-building of a chimney which has fallen down, and in the absence of an express agreement on the part of the tenant to do so, it is the duty of the landlord to repair an injury of that description. If he negligently suffers one of the chimneys to remain in so defective a state that it tumbles down, causing loss and injury to the tenant, he is answerable to the tenant for the consequences. The judgment in favor of plaintiff was therefore affirmed.
31. Bold v. O’Brien, 12 Daly, 160.
Action by tenant of a part of a dwelling-house against the landlord for damages to personal property caused by the falling of the building. The plaintiff resided upon the top floor of the building in question, which for some time had been in an unsafe condition to the knowledge of defendant, who, when the same was called to his attention by plaintiff, persuaded the latter to remain in it upon his assurance that it was all right and that he would have the difficulty fixed and that whatever damage was done to the plaintiff’s furniture he would pay for it.—Held, that the tenant was not under any obligation to make repairs of so substantial and general a character extending beyond the premises occupied by him ; that the landlord, where the tenant occupies but a small portion of the tenement, is bound to keep the parts under his own control in such state of repair that the tenant may occupy his premises with safety, and that a judgment in favor of the plaintiff should be sustained.
32. Henkel v. Murr, 31 Hun, 28.
Action by plaintiff, a visitor to a tenant in a tenement-house, against the landlord for injuries sustained by catching her heel in a hole in an oil cloth laid by defendant upon the stairs in the hall, causing her to trip and fall receiving the injuries complained of.—Held, that in order to charge defendant, it was necessary to show that he had neglected, after knowledge or notice of its dangerous condition, to repair the oil cloth with promptitude, but if he had no such notice or knowledge, and had not omitted to use such reasonable means and precautions for ascertaining its condition and making requisite repairs, as his relation to it and his duty to the tenants and every person lawfully using it demanded at his hands, the plaintiff had failed to establish negligence, and a verdict in her favor should be reversed.
33. Donner v. Ogilvie, 49 Hun, 229.
Action by infant child of tenant against landlord for injuries sustained by falling from a platform fourteen feet high erected in front of the tenant’s apartments and necessary to be used for ingress and egress to and from such rooms, which platform was alleged in the complaint to have been in an improper, unsafe and dangerous condition by reason *192 of the negligence of the defendants.—Held, sustaining a demurrer to the complaint, that as it did not appear that the defendants had retained control over the platform, the ordinary rule that no warranty is implied on the part of the lessor should be applied.
34. O’Sullivan v. Norwood, (N. Y. Common Pleas, 1887), 8 State Rep. 388.
Action by visitor to tenant against landlord for injuries sustained incoming down the general stairway of the building, by reason of defendant’s omission to properly light the hallway.—Held, that the building being let to several tenants and the staircase being a common passageway for all, it remained in the possession and under the control of the-lessor, he owed the duty of keeping it in repair and reasonably safe for travel, and that if ordinary care required a light in order to make the stairway reasonably safe for travel, it was the lessor’s duty to furnish it, and for neglect in this respect he was liable to any person lawfully using the stairway.
35. Doolard v. Roberts (Supreme Court, First Department, Jan. 1890), 28 State Rep. 569.
Plaintiff occupied apartments in a tenement-house owned by defendant, the lower hallway of which was used in common by the tenants of the building and constituted their only access to their apartments. The ceiling in such hallway was in a dangerous condition and defendant had received notice of that fact. Plaintiff’s infant daughter, while going through such hallway, was struck by a piece of plastering falling from the ceiling, striking her upon the head, prostrating her and causing serious injuries.—Held, that the liability of a landlord, who retains-control of a portion of the premises, for an injury sustained through his negligence, is well settled; that the hallway in question was not rented to any tenant except in common with the others, and the defendant was charged with keeping it in repair within the rule, and "that its unsafe condition and notice to defendant being established all the elements-necessary to justify a recovery existed. The court held further that the fact that plaintiff and his daughter knew of the defects mentioned did not necessarily charge them with contributory negligence, the passageway in question furnishing the only access to their premises, nor was the duty imposed upon them when walking through the hallway of being constantly on the alert to protect the defendant from the consequences of his own misconduct; that it was the duty of the defendant as soon as he was informed of the danger to remove it.
36. Oases where owner covenanted to repair.] Johnson v. Dixon, 1 Daly, 178.
Action by tenant of a stall to recover from the landlord the value *193 of a horse injured by reason of the bad condition of the flooring, which defendant’s agent had agreed to repair. There was an excavation under the stall of which plaintiff was ignorant and the flooring was rotten. Plaintiff’s son called the attention of defendant’s agent to the fact that the stall was unfit for- use and the agent replied that he would attend to it. The morning, after this was said, it was found that the horse had broken through the floor and sustained injuries from which he died.—Held, that the renting being by the month, the tenant was under no obligation to take up the defective floor and put down a new one, but that the obligation to do so rested upon the defendant, and that for his neglect in so doing the plaintiff was entitled to recover.
37. Flynn v. Hatton, 43 How. Pr. 333.
Action by plaintiff and infant child of the tenant against landlord to. recover for personal injuries sustained by the giving way of the railing of a piazza by reason of its decayed condition. The railing had been for two years getting quite rotten and out of repair. Plaintiff’s parents were aware of its dangerous condition and defendant had promised to have it repaired.—Held, that the action could not be sustained on the following grounds: (1.) The piazza was' included in the demise to plaintiff’s father and did not constitute a common passage over which the landlord retained a general or exclusive control. (2.) Conceding that defendant promised to keep it in repair, a breach of her agreement only subjected her to liability to the party with whom she contracted for such damages as might reasonably be supposed to be within the contemplation of the parties, and did not include personal injuries sustained by a member of the tenant’s family. (3.) No warranty is to be found in principle or authority for the proposition that a landlord under contract generally to keep the premises in repair is, for breach, also further liable to his tenant as in tort for willful refusal or neglect to perform his obligation, and his subsequent parol promise after being-notified of defects to make necessary repairs, unless founded on a new consideration, superadds nothing to his original obligation. (4.) The plaintiff was chargeable with the contributory negligence of its parents.
Note.—This and the two following cases are probably no longer regarded as authorities upon the question of the liability for injuries to person and property, in an action ex delicto based on failure to repair after notice. See cases below],
38. Arnold v. Clark, 45 Super. Ct. (J. & S.) 252.
The plaintiff entered into possession of premises under a lease, which contained no covenant to repair, but subsequently the agent of defendant, the lessor, made a parol promise, founded upon no new consideration, to lay a new floor, the' existing one being soaked with oil which *194 had been formerly stored there, and being unfit for plaintiff’s use. Plaintiff continued to use the floor with knowledge of its dangerous condition and received the accident complained of by slipping and injuring his arm.—Held, that • plaintiff was guilty of contributory negligence in using the floor after actual experience of its dangerous condition ; that the parol promise to make repairs added nothing to the original obligations and furnished no ground for awarding additional damages; and even had there been an agreement to repair, it would not be deemed to contemplate any destruction to life, or injuries to person or property which might result from an omission to fulfill the agreement.
39. Kabus v. Frost, 50 Super. Ct. (J. & S.) 72.
Action by tenant against landlord for negligence in permitting the ceiling of the store rented to plaintiff to become broken and loose so that it fell upon plaintiff, causing the injuries complained of. The lease enumerated certain repairs to be made by the tenant, not including the ceiling, but there was no covenant to repair on the part of the landlord. Held, that the action would not lie; that there was no obligation on the part of the landlord to repair, and that if there had been its breach would not authorize a recovery for personal injuries. [Following Arnold «. Clark, supra.]
40. Benson v. Suarez, 43 Barb. 408.
Defendant was the owmer of a tavern stand and appurtenances which he had leased and covenanted to keep in order. He failed to keep an old shed on the premises in repair, and by reason of its being left in a weak and dilapidated condition, it fell down and drew down a shed of the plaintiff’s adjoining to it, injuring his wagons, etc.— Held, that defendant was liable for the injury, his liability not being discharged by his having leased the premises to another.
41. O'Brien v. Capwell, 59 Barb. 497.
Action by employee of tenant against the landlord for personal injuries sustained by the giving away of the railing of a back piazza upon which plaintiff was suspending clothes at the time of injury. The plaintiff claimed that the defendant had negligently and carelessly permitted the premises to become decayed and out of repair. There was no covenant to repair. In reversing a judgment for plaintiff on the ground that a non-suit should have been granted, the court held that the plaintiff, at most, occupied but the position of the tenant and that as between landlord and tenant the law is well settled when there is no fraud or false representations or deceit, and in the absence of an express warranty or-covenant to repair, that there is no implied covenant that the demised premises are suitable or fit for occupation, or for the *195 particular use which the tenant intends to make of them, or that they are in a safe condition for use; and that the principle of caveat emptor applies to all contracts for the letting of property, real, personal or mixed, as much as to contracts of sale.
42. Doupe v. Genin, 45 N. Y. 119.
Action by tenant against landlord for damages to goods and loss of business through the omission of the defendant to repair the roof of the demised premises which had been destroyed by fire. There was a provision in the lease that in case of destruction of the premises by fire so .as to make them untenantable for more than thirty days, the rent should, at the option of the tenant, cease.—Meld, sustaining order for new trial and awarding judgment absolute, against plaintiff, that although plaintiff was a tenant of but a portion of the building, and the fire occurred in another portion, there was no obligation upon the part of the landlord to repair in the absence of a covenant to that effect, and the action could not therefore be sustained.
43. Jaffe v. Harteau, 56 N. Y. 398.
Action by wife of sub-lessee against owner to recover damages for personal injuries sustained by the explosion of a kitchen boiler in the demised premises. It appeared that the explosion might have been prevented had there been a safety valve affixed to the boiler, but it was not shown that the defendant knew or'had reason to suspect that the boiler was improperly constructed or that any danger was to be apprehended from its use. The lease from the lessor contained no covenant to make any repairs to the premises, nor was there any sufficient proof of such agreement on his part.—Meld, that the obligation to the subtenant was the same as that to the lessee, and that under the circumstances the defendant was not liable for the condition of the premises and that the complaint was rightly dismissed.
44. White v. Sprague (Supm. Ct. 1887), 9 State Rep. 220.
Action by janitress of apartment building for injuries sustained while in the employ of a tenant of an apartment in washing clothes, by reason of the falling upon her head of plastering which was cracked $nd threatening, and which the landlord had stated he would attend to right away, although at the time he did not consider it to be dangerous, but he gave the subject no further thought until after the happening of the accident. The evidence was such as to support the inference that the defendant was under obligation to keep the ceiling in reasonable repair, and that there were indications that it required attention.—Meld, under the authority of Edwards v. N. Y. & Harlem R. R. Co., 98 N. Y. 245, that defendant was liable upon breach of his agreement to repair in an action for negligence by plaintiff, who was *196 lawfully upon the premises, and that plaintiff could not, as a legal conclusion, be charged with contributory negligence under the circumstances, her eye-sight being somewhat defective, and she being to some extent assured by the defendant that there was no cause for alarm.
45. Oases where owner let dangerous premises.] Davenport v. Ruckman, 37 N. Y. 568.
Action against the owner for injuries sustained by falling into an excavation in front of a building. The defendant did not make the excavation complained of, and the premises were occupied at the time by a tenant with whom defendant had agreed to put them in repair. Plaintiff was injured while passing along the street in front of the premises.—Held, sustaining a recovery, that the premises having been in a dangerous condition when defendant put his tenant in possession, he was not relieved from liability by the lease, but it simply added another party to the negligence, and as between these parties defendant was the principal, as he agreed to put the premises in repair, but had failed to do so.
46. Swords v. Edgar, 59 N. Y. 28.
Action against owners of pier for damages causing death of plaintiff’s intestate, a longshoreman employed on such pier, some of the timbers being rotten and unfit for use. A lessee of defendant’s was in possession of the pier at the time of the injury. Such lessee had covenanted to keep the pier in order and repair at its own cost. The insecure condition of the pier had existed at the time the lease was made. —Held, that defendants were liable, having leased the premises on which there was an existing nuisance.
47. Camp v. Wood, 76 N. Y. 92.
Defendant occupied an inn on the premises in question, and had rented a hall in the third story for a dance, which plaintiff attended. During the evening plaintiff passed through a doorway on the floor below such hall on to a wooden awning above the street: walked along such awning for a distance of about forty feet until he reached the end and was precipitated to the ground, receiving the injury in question. The night was dark and there was no guard or railing to the awning.— Held, that defendant by letting the hall for public purposes, held out to the public that it was safe, and was bound to exercise care to provide safe arrangements for the entrance and departure of people, for a breach of which duty an action would lie; and that a judgment in favor of plaintiff upon a verdict should be sustained.
48. Edwards v. N. Y. & Harlem R. R. Co., 98 N. Y. 245.
Action by person attending public entertainment, against lessee of the building for that purpose, to recover damages for injuries sustained *197 by plaintiff through the falling of a gallery alleged to have been unsafely constructed.—He Id, sustaining a non-suit, that there was no implied warranty that the property was fit for occupation or suitable for the use or purposes for which it was hired, and that the liability of defendant, if any, must rest not upon the contract of defendant but upon its delictum; that although if a landlord lets premises agreeing to keep them in repair and fails to do so he is liable for his negligence to any person lawfully upon the premises and sustaining injury thereby, yet where he has created no nuisance, and is guilty of no wrong or negligence, no case is made out against him. There is no distinction in this respect between a demise of dwelling-houses and of buildings to be used for public purposes; in either case, if guilty of negligence or other delictum leading directly to the accident, he is liable, otherwise not. In the case at bar the gallery in question having been erected for the occupation of a limited number of persons in boxes, and being suitable for that purpose, but such gallery having been used without the knowledge of defendant by a large, noisy and boisterous crowd, the mere fact that it fell was not sufficient to charge the defendant with negligence.
49. Ahern v. Steele, 115 N. Y. 203.
Action for damages caused by the death of plaintiff’s infant son who Jell through a defective pier owned by defendants and in possession of other lessees.—Held, [reviewing the American and English authorities,] that as the nuisance complained of was created during the existence of a precedent estate without any notice thereof to the defendants, they were not liable to the action.
50. Hungerford v. Bent (Supreme Court, General Term, Fifth Department ; December, 1890), 28 State Rep. 191.
Action against owner of building by passer-by injured by fall of •hoisting apparatus defectively constructed by a former tenant with defendant’s consent. The jury found that the apparatus was unsafe and insecure when the premises were rented by defendant to the tenant in possession at the time of the accident.—Held, affirming judgment in favor of plaintiff, that defendant having rented the premises when they were in an unsafe and insecure condition was liable to any one of the public injured in consequence thereof.
51. In Ahern v. Steele, 115 N. Y. 203, 222, the court (Earl, J.) states the rule to be as follows:—“Even when an owner demises premises and -covenants to repair, the covenant cannot inure directly to the benefit of .a third person not a party thereto. But in such case the third person injured because, for want of repairs, the demised premises have become a nuisance, has a cause of action primarily against the tenant. But be *198 cause the tenant in case of a recovery against him could sue his landlord for indemnity upon the covenant, to prevent circuity of action, the person injured may bring his action against the landlord, not because the-landlord owed him any duty to repair, but because he owed that duty to his tenant.”
III. Relation Between Weong-dobr’s act ok neglect, and his Service for Defendant.
52. Actor serving as ticket taker.] Fowler v. Holmes, 3 N. Y. Supp. 816.
Defendant was proprietor of a theatre and was personally in charge-of the same, where he employed a traveling theatrical troupe to play for him, paying them therefor one-half the gross receipts. W., one of' this company, was one evening collecting the tickets for the proprietor, and attending to those who wanted to exchange seat-tickets for other-seat-tickets ; and while so engaged was approached by plaintiff with a request to exchange the tickets for himself and his wife for tickets for other seats; and W. ordered plaintiff to get in line, and take his turn; his refusal to do so resulted in some words, and thereon an assault by W. upon plaintiff.—Held, sufficient evidence to submit to the jury, the-question whether W. was defendant’s servant, and acting within the-scope of his employment; and that a non-suit was properly denied (citing Rounds v. Railroad Co., 64 N. Y. 129).
53. Fraud by telegraph operator.] ■
McCord v. W. U. Tel. Co., 1 Law Rep. Am. 143, 145; s. c., Minn. Sept., 1888.
Held, that a telegraph company was liable for the wrongful act of" its operator in sending a fraudulent dispatch whereby damage was occasioned the receiver, on the ground that the business entrusted to the-agent involved a duty owed by the master to the public or third persons, and that the master was liable for the breach of it, even though arising from the wilful, malicious or fraudulent act of the agent. In. support of this doctrine, the court examined with approval Booth v. Farmers’ & M. Nat. Bk., 50 N. Y. 400, and Farmers’ & M. Bk. v. Butchers’ & D. Bk., 16 Id. 125, 133.
54. Customer in store.] Geraty v. Stern, 30 Hun, 426.
The plaintiff went to the defendant’s store in New York city to purchase an ulster for herself. After she had examined one, and put it on-preparatory to its purchase, a floor-walker in the employ of the defendant approached and told her that slie did not wish to purchase the-ulster, but was a spy from a rival establishment, and'told the'saleswoman to take the cloak from the plaintiff, which was done.—Held,. *199 that this constituted an actual assault, and that the defendants were liable for it.
55. Pursuit off the premises.] Golden v. Newbrand, 52 Iowa, 59.
Defendants were owners of a brewery, and employed an armed watchman to guard the property and prevent breaches of the peace. Plaintiff’s intestate being intoxicated and disorderly, was pursued by the watchman, and while retreating was shot and killed.—Held, that the shooting was not done in the line of the watchman’s duty, and that defendants were not liable therefor.
56. Gilliam v. Railroad Co., 70 Ala. 268.
A conductor stopped his train, pursued a boy on foot into his father’s house, with pistol in hand, seized him and carried him off on the train.—Held, that the railroad company was not liable, the acts being plainly not within the scope of the conductor’s employment.
57. Driving off of the_ train.] Lang v. Railroad Co., 51 Hun, 603.
A boy of eleven years got on a freight-car without permission. The brakeman told him to get off, and rolled a large piece of coal at him as he was ready to jump off, which struck him on the head, causing him to fall under the wheels and lose his foot.—Reid, that defendant was liable; that the brakeman was engaged in the master’s business, and acted within the general scope of the authority conferred upon him,, .and simply did not maintain his self-control nor use good judgment as to the time when it was safe to drive the passenger from the train.
58. Hufford v. Railroad Co., 58 Mich. 118.
Action for assault and battery committed by one of defendant’s conductors. Plaintiff had purchased a ticket of the agent, believing it genuine, and so told the conductor. Upon the plaintiff’s refusing to pay his fare the conductor laid hands upon him with the purpose of removing him from the train.—Reid, that the conductor was guilty of assault and battery, for which the company was liable in damages.
59. Northwestern R. R. Co. v. Hack, 66 Ill. 238.
Action by parent against railroad company for damages for causing the death of his son. The boy was eleven years old, and was upon the steps of the moving car, when a servant of the railroad company, employed' to clean the cars and secure them, and whose duty it was to keep persons out of the same while in the discharge of that duty, kicked the boy’s hand loose from a railing, causing him to fall and be run over and killed.—Reid, that while the act itself was not in the line of duty of any employee of the company, yet if done while the servant was in the discharge of his duty, the company was liable.
*200 Fasher v. Mo. Pac. R. Co., 32 Mo. App. 378.
A boy, while attempting to obey a brakeman’s order to get off a moving train, was caused to fall, and was injured by the brakeman stepping on his fingers as he was descending the ladder, and causing him to relax his hold.—He Id, that the company could not be held liable in the absence of evidence that the brakeman’s act was in the course of his employment.
60. Insulting stoppage of passengers.] Where plaintiff purchased a ticket to ride on defendant’s elevated railroad and without the gate-man’s knowledge put it in the ticket box, but the gateman, to his mortification, in the presence of many people refused to let him board the train, although the ticket agent, his superior, said he sold plaintiff a ticket and told the gateman to let him ride; and plaintiff not being able to ride without paying for another ticket had to descend to the street.—Held, that defendant was liable for actual and malicious damages and that a verdict for $500 was not excessive. [Citing Isaacs v. Railroad Co., 47 N. Y. 126; Steamboat Co. v. Railroad Co., 24 Conn. 40 ; Mali v. Lord, 39 N. Y. 881; Stewart v. Railroad Co., 90 N. Y. 588; Catlin v. Adirondack Co., 20 Hun, 22 ; Wilds v. Railroad Co., 24 N. Y. 441; Caldwell v. Steamboat Co., 47 N. Y. 282; Gravel Road Co. v. Gause, 40 Amer. Rep. 227 note; Rounds v. Railroad Co., 64 N. Y. 129 ; Mott v. Ice Co., 73 N. Y. 543; Yates v. Railroad Co., 67 N. Y. 103; Hamilton v. Railroad Co., 53 N. Y. 28 ; Huckle v. Money, 2 Wils. 206; Silver Plate Co. v. Green, 72 N. Y. 22.] N. Y. City Ct., 1888. Cagney v. Manhattan Ry. Co., 2 N. Y. Supp. 410.
61. Illegal arrest.] Lynch v. Metropol. El. R. R. Co., 90 N. Y. 77.
Gatekeeper detained plaintiff, preventing his exit because he did not produce and surrender lost ticket.
62. Clark v. Stafin, 47 Hun, 345.
Keeper of .pleasure resort liable for wrongful arrest by Pinkerton’s force, under arrangement by which the latter furnished all the police needed, where defendant’s manager approved the arrest. Babnabd, P. J., said :—Here the Pinkertons had general authority to do all necessary police acts. The management of this business was confided to them, and if through lack of judgment or discretion, or even infirmity of temper, they went beyond the strict line of authority, the defendant must be held liable. [Citing Cohen v. Dry Dock, etc. R. R., 69 N. Y. 170 ; Shea v. Sixth Ave. R. R., 62 Id. 180.]
63. Arrest of wrong person.] Evansville, etc. R. R. Co. v. McKee, 99 Ind. 519; s. c., 50 Am. Rep. 102.
Action against a railroad company for the arrest and false imprisonment of plaintiff, by an employe of the company. Such employe was an *201 agent to detect, arrest and prosecute persons who unlawfully obstructed its track; and acting in the scope of this employment, he arrested the innocent plaintiff.—Held, that the railroad company was liable.
64. Disobedience of orders.] Powell v. Deveney, 3 Cush. 300.
The defendant’s servant, instead of placing his master’s truck in the yard provided for it, where he had been directed by the master to leave it on the termination of his day’s work, left it in the street, whereby a collision occurred in the street, resulting in damage to plaintiff while passing along the street/—Held, that the master was liable, and was not exempt because the servant disobeyed his orders.
65. Harris v. Louisville, etc. R. R Co., 35 Fed. Rep. 116.
Action for damages for wrongful arrest by detective in service of defendant. On motion for a new trial.
The plaintiff was arrested by detectives in the service of defendant in pursuit of a criminal who did not in any manner resemble the plaintiff, and after the defendant had given orders against further pursuit. __ —Held, that the defendant was liable.
66. New Orleans, etc. R. R. Co. v. Allbritton, 38 Miss. 242.
Action for damages from a railway collision. Appeal from judgment for plaintiff.
The conductor ordered the engineer to wait at a station until another train passed, but the engineer disobeyed the orders by starting the train, causing the collision which resulted in plaintiff’s injury, who was a postal clerk on the train.—Held, that the principal must be held responsible where his employment afforded the agent the means or opportunity which he used while so employed in committing an injury on a third person and the wilful trespass or injury of the agent derived from the authority confided to him by the principal as a source of power in the exercise of his master’s employment makes the principal responsible.
67. Pittsburgh, C. & St. L. Ry. Co. v. Kirk, 1 N. E. Rep. 849.
A servant of a railroad company, while attending to his duties in repairing the track, moved a hand-car upon the parallel track of another company, causing an' accident.—Held, that where a servant, engaged in accomplishing an end which is within the scope of his employment, adopts means reasonably intended and directed to that end, which result in injury to another, the master is answerable, regardless of the motives which induced the adoption of the means, even though the means employed are outside of the authority of the servant, and against the express orders of the master.
*202 68. Philadelphia & R. Ry. Co. y. Derby, 14 How. 468.
A servant of the corporation ran an engine on its track contrary to its express order, and thereby caused a collision, in which defendant was injured.—Held, that the corporation was liable for the injury; Mr. Justice Grier said in the opinion: “ The rule of respondeat superior, or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent or deceitful. If it be done in the course of his employment, the master is liable ; and it makes no^ difference that the master did not authorize, or even know of, the servant’s act or neglect; or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant’s employment.”
69. Heenrich v. Pullman Palace Car Co., 20 Fed. Rep. 100.
Action to recover damages for an injury to plaintiff’s person while a passenger in defendant’s car, caused, as alleged, by the negligent handling of a pistol by the porter in charge of said car while “ in the discharge of his duty as such porter,” and “ while attending to the defendant’s business," whereby the same fell on the car floor and was discharged, the ball entering the thigh of the plaintiff. On demurrer,— Held, no defence that the porter received the pistol from another passenger in violation of the company’s rules and directions, but that the company was liable; that a master is liable for the act- of his servant when done within the scope or general course of his employment, although done contrary to the master’s orders.
TO. Ramsden v. Boston & A. R. Co., 104 Mass. 117.
Action against a railroad company for assault and battery, for the act of its conductor in attempting unlawfully and wrongfully to seize the parasol of plaintiff for her fare.—Held, that the company was liable ; that if the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is wilful or merely negligent, or even if it is contrary to an express order of the master.
71. Act after hours.] Noblesville, etc. Road Co. v. Gause, 76 Ind. 142.
The defendant’s servant kept its toll-gate, it being at all times in his charge as the only officer or agent of the company defendant. His duty to collect tolls ceased at 9 p. ir., and the plaintiff alleged injury from his letting down the beam of the gate upon him while passing the gate after that hour.—Held, that no inference could be drawn that he ceased to be its servant after that hour, and for an injury negligently inflicted, as'in this instance, the company was liable.
*203 72. Doing his own errand on the way bach.] Mulvehill v. Bates, 31 Minn. 364.
The defendant, owner of an express wagon, employed a driver, with authority to secure and transact such business as he could; the driver, having delivered a trunk, on his return got a load of poles for himself, and while carrying them home on the wagon, negligently ran over and injured the plaintiff’s child.—Held, that the defendant was liable.
73. Insam act of employee.] Christian v. Railroad Co., 7 S. E. Rep. 216.
Action by a widow against the company for the homicide of her husband by its agent. Her husband, while in the agent’s office for the transaction of business pertaining to the agency, was killed by the agent. The agent, to the knowledge of the company, was subject to disease and aberration of mind, sometimes taking the form of homicidal mania.—Held, under the Georgia Code, that the company was liable.
74. Service at special instance of plaintiff.] Adams v. Cost, 62 Md. 264.
An action for damages for the killing of a horse placed in defendant’s care, at his livery stable. Plaintiff instructed a servant of the proprietors of the stable to take the horse out for exercise, which was, however, no part of the contract of livery. The horse died while the servant was riding it out for such purpose.—Held, that the proprietors of the stable could not be held liable to the owner,' though the horse died in consequence of the carelessness of their servant—because he was not engaged in the performance of the service for which he was employed.
75. — of third person.] Garretzen v. Duenckel, 50 Mo. 104.
Action for damages to plaintiff by the firing of a gun by a salesman in the employ of defendant. Appeal from verdict for plaintiff. A clerk in the defendant’s store, while showing a gun to a customer in the absence of defendant, loaded the gun in compliance with the customer’s request and contrary to the orders of defendant, and unintentionally shot a third person across the street.—Held, that the servant at the time was serving his master, and the act was therefore in the course of the servant’s employment; that the master was liable, although the servant acted injudiciously and negligently, and even though he disobeyed instructions.
76. Act of stranger.] Pastene v. Adams, 49 Cal. 87.
Action for personal injuries sustained on the premises of defendant.
While passing through defendant’s lumber yard on the way to the *204 office to make a purchase, a piece of timber that was stocked in a careless manner, was struck by a passing wagon, and fell on and injured plaintiff.—Held, that the defendant was liable; although the direct cause of the injury was the act of a stranger in driving.
77. Ticket agents substitute.] Fick v. Chicago, etc. R’y Co., 68 Wis. 469.
Action for damages for injuries from an assault on plaintiff by one of defendant’s employees. The ticket agent had left another employee in charge of the ticket office, who failed to return the proper change upon the sale of a ticket, and upon being asked therefor by the purchaser, assaulted and struck him.—Held, that the railroad was liable, and that they were under obligation to protect plaintiff against the violent acts of their servants under such circumstances.
78. Wilful or malicious act of employee.] Mott v. Consumers’ Ice Co., 73 N. Y. 543.
In an action to recover damages for injuries alleged to have been sustained through the wrongful act of defendant’s servant, plaintiff’s evidence tended to show that a driver of one of defendant’s ice carts, while engaged in the performance of his duties, wilfully drove his cart against plaintiff’s carriage. Plaintiff was non-suited.—Held, error ; and that for the acts of a servant, within the general scope of his employment while engaged in his master’s business, the master is responsible whether the act be done negligently, wantonly, or even wilfully.
79. Schultz v. Third Ave. R. Co., 89 N. Y. 242.
An action for damages from personal injuries sustained by plaintiff’s being thrown from defendant’s car by one of their conductors, in a wilful, reckless and malicious manner.—Held, that the defendant was liable.
80. Terre Haute and Indianapolis R. R. Co. Jackson, 81 Ind. 19.
Action for damages to a passenger by the acts of the company’s servants. Appeal from judgment for plaintiff.
By the wilful act of a brakeman, a jet of water was dashed upon a passenger while being carried. —Held, a breach of the contract rendering the company liable; that a corporation is liable for the wilful acts and torts of its agents, done to the injury of others, within the general scope of their employment, though the particular acts had not been previously.authorized, and have not been ratified since by the corporation.
81. A common carrier undertakes to protect the passenger against anything arising from the wilful misconduct of its servants, while engaged in discharging a duty which the carrier owes to the passenger. Stewart v. Brooklyn & Crosstown R. R. Co., 90 N. Y. 588.
In Feeney v. The Brooklyn City Railroad Co., Barnard, P. J., said: *205 “The court of appeals in the case of Stewart v. The Brooklyn & Crosstown Railroad Co., 90 N. Y. 588,—Held, that the carrier was liable for the unjustifiable assault upon the passenger, when the servant, in that case a conductor, was not acting within the scope of his employment. The effect of the decision is to hold that a carrier’s servant is the carrier himself in respect to assaults committed upon the journey.”
Where the master has undertaken to transport a person safely, an act which amounts to a breach of the carrier’s contract if negligently done, is equally a breach if done wilfully or maliciously. Stewart v. Brooklyn & Crosstown R. R. Co., 90 N. Y. 588. If he places lady passengers under the protection of libertines who insult or assault them, or male passengers under the protection of drunken ruffians who fall upon and beat them without cause, he is responsible for the injury. Ib.
82. But on this question, the test adopted in Cosgrove v. Ogden, 49 N. Y. 255, s. c., 10 Am. Rep. 361, that in such cases, especially where the implication of authority is doubtful, the inquiry may well be whether the servant was, on the one hand, acting either maliciously or in his own individual interest, or on the other hand, bona fide, in preservation, or furtherance of the master’s interests, was recently approved in Birmingham Waterworks Co. v. Hubbard, 85 Ala. 179; s. c., 7 Am. St. Rep. 35, the court saying: “ The doctrine of that case, in our judgment, is both just and sound, and is sustained by authority;” and citing : Wood on Master and Servant, 2d ed., § 284, pp. 234- 236 ; § 300, p. 567 ; Gooley on Torts, 535-538.
83. Bor copious citations of cases on the modern doctrine of the master’s liability for the acts of his servant, see 35 Fed. Rep. 116—note to Harris v. Louisville, W. O. & T. R. Co.; 20 Fed. Rep. 103—note to Heenrich v. Pullman Palace Car Co.; 1 Northeastern Rep. 849—note to Pittsburg, C. & St. L. Ry. Co. v. Kirk; 15 Fed. Rep. 69—a very elaborate note to Hall v. Memphis & C. R. Co., by Judge Seymour D. Thompson.