JOHN A. STEWART, Appellant, *v.* THE BROOKLYN AND CROSS-TOWN RAILROAD COMPANY, Respondent.

Plaintiff, while a passenger on one of the defendant's street cars, was unjustifiably attacked and beaten by the driver, who also acted as conductor. In an action to recover damages, *held* that the defendant was liable.

The rule relieving a master from liability for a malicious injury inflicted by his servant, when not acting within the scope of his employment, does not apply as between a common carrier of passengers and a passenger.

Such a carrier undertakes to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger.

*Isaacs* v. *Third Ave. R. R. Co.* (47 N. Y. 122 ; 7 Am. Rep. 418), distinguished and limited.

(Argued November 13, 1882 ; decided December 28, 1882.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made April 28, 1880, which affirmed a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial.

This action was brought to recover damages for injuries to plaintiff alleged to have resulted from a malicious and unjustifiable attack made upon him by one of defendant's employes. The defendant is a railroad corporation, owning and operating a street railroad in the city of Brooklyn. The plaintiff was a passenger on one of the defendant's horse cars, having no conductor; the driver being the only person in charge of the car, and acting both as driver and conductor. While the plaintiff was on the car a newsboy jumped on it, and was ordered off by the driver. The boy got off; the driver stopped his car, tied the reins round the brake handle, climbed over the front dash board and ran after the boy, caught him, and beat him. The passengers interfered to protect the boy. Afterward the driver returned to the car and started it, but, being excited, began to abuse the passengers, calling them bastards, etc., and finally entered the car, seized the plaintiff by the coat, pushed and knocked his head against

the panel of the window, at the same time striking him across the head with the butt end of his whip, thus beating the plaintiff severely. The passengers again interfered, and the driver drove his car on. When they came near the Eastern District Hospital the plaintiff was assisted out of the car and taken to the hospital, where his wounds were dressed. There was some evidence tending to show that the driver was under the influence of liquor. At the close of the case the plaintiff was nonsuited, and judgment entered dismissing the complaint.

*Spencer L. Hillier* for appellant. The question whether defendant's conductor acted within the scope of his employment should have been submitted to the jury. (*Jackson* v. *Second Avenue R. R. Co.*, 47 N. Y. 274; *Mott* v. *Consumers' Ice Co.*, 73 id. 543; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 87 id. 25; *Cohen* v. *D. D. E. B. & B. R. R. Co.*, 69 id. 170; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 466; *Hart* v. *Hudson R. B. Co.*, 80 id. 622; *Bernhard* v. *R. & S. R. R. Co.*, 1 Abb. Ct. of App. Dec. 131; *Redding* v. *S. C. R. R. Co.*, 16 Am. Rep. 681; *Shea* v. *Sixth Ave. R. R. Co.*, 62 N. Y. 185.) Defendant, having chosen the conductor and put him in a responsible position, should be held liable for any improper or unfortunate results. (*Hobbit* v. *L., etc., & R. Co.*, 4 Exch. 255; 15 Barb. 574; 51 id. 9; 27 Vt. 110.) The carrier's obligation is not only to carry his passengers safely and properly, but also to treat them respectfully. He must not only protect them from violence by strangers and co-passengers, but must *a fortiori* against the violence of his own servants. (*Goddard* v. *G. T. R. R.*, 57 Me. 202; 2 Am. Rep. 39; *Railroad* v. *Bleeker*, 27 Md. 277; *Pittsburgh R. R. Co.* v. *Slusser*, 19 Ohio St. 157; *Shirley* v. *Billings*, 8 Bush [Ky.], 147; *Atlantic & G. W. R. R. Co.* v. *Dunn*, 19 id. 162; *S. C.*, 2 Am. Rep. 382; *Bryant* v. *Rich*, 106 Mass. 189; *Chamberlain* v. *Chandler*, 3 Mason, 242; *S. C.*, 8 Am. Rep. 311; *Day* v. *Owen*, 5 Mich. 520; *Commonwealth* v. *Powers*, 7 Mass. 596; *Neeto* v. *Clark*, 1 Cliff. 145; *Bass* v. *Chicago R. R. Co.*, 36 Wis. 450; *Crocker* v. *C., etc., R. R. Co.*, id. 657; 17 Am. Rep.

504; *Hanson* v. *E. & N. A. R. R. Co.*, 62 Me. 84; *S. C.*, 16 Am. Rep. 404.)

*Wm. N. Dykman* for respondent. If a servant, under the guise and cover of executing his master's orders, and exercising the authority conferred upon him, willfully and designedly, for the purpose of accomplishing his own independent, malicious or wicked purposes, does an injury to another, then the master is not liable. (*Round* v. *D., etc., R. R. Co.*, 64 N. Y. 129, 136; *Mott* v. *Consumers' Ice Co.*, 73 id. 543; *Mali* v. *Lord*, 39 id. 81; *Isaacs* v. *Third Ave. R. R. Co.*, 47 id. 122; *Cosgrove* v. *Ogden*, 49 id. 255.) The act and its motive determine whether the court can say *respondeat superior*, and not the condition the servant is in. (*Wynn* v. *Allard*, 5 Watts & S. 524.) The jury could not speculate and there was no room for inference. (*Cordell* v. *N. Y. C. R. R. Co.*, 75 N. Y. 322.)

Tracy, J. As there was no conflict of evidence upon the trial, the only question to be determined is, whether upon the facts proved the plaintiff was entitled to recover? The defendant was a common carrier of passengers. The plaintiff had taken a seat in one of the defendant's cars, to be conveyed from the western district of Brooklyn to the eastern district of the same city, and had paid his fare. Before reaching the point where he was to leave the car he was attacked by the driver of the car and cruelly beaten. The trial court dismissed the plaintiff's complaint on the ground that the defendant's servant, in assaulting the plaintiff, was not acting within the scope of his employment, but attacked the plaintiff to gratify some wicked and malicious purpose of his own. Had the person assaulted been one to whom the defendant owed no duty, the dismissal of the plaintiff's complaint would probably have been correct; but the rule which applies in such a case has no application as between a common carrier and his passenger. In such a case a different rule applies. By the defendant's contract with the plaintiff, it had undertaken to carry him

safely and to treat him respectfully; and while a common carrier does not undertake to insure against injury from every possible danger, he does undertake to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. In *Goddard* v. *The Grand Trunk Railway of Canada* (57 Me. 202; 2 Am. Rep. 39), it is said that "The carrier's obligation is to carry his passenger safely, and properly, and to treat him respectfully, and if he intrusts this duty to his servants, the law holds him responsible for the manner in which they execute the trust." In *Day* v. *Owen* (5 Mich. 520), the duties of common carriers are said to include every thing calculated to render the transportation most comfortable and least annoying to the passengers. In *Nieto* v. *Clark* (1 Cliff. 145), the court says: "In respect to female passengers, the contract proceeds yet further and includes an implied stipulation that she shall be protected against obscene conduct, lascivious behavior, and every immodest and libidinous approach." A common carrier is bound, so far as practicable, to protect his passengers, while being conveyed, from violence committed by strangers and co-passengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract. (*Commonwealth* v. *Power*, 7 Metc. 596; *P. F. W. & C. Ry. Co.* v. *Hinds*, 53 Penn. St. 512; *Goddard* v. *Grand Trunk Ry.*, 57 Me. 213; 2 Am. Rep. 39.) In *Flint* v. *N. & N. Y. Transp. Co.* (34 Conn. 554), the plaintiff was injured by the discharge of a gun dropped by soldiers engaged in a scuffle. The court held that passenger carriers are bound to exercise the utmost vigilance and care, regarding those they transport, from violence from whatever source arising; and the plaintiff recovered a verdict for $10,000.

In the present case the defendant had intrusted the execution of the contract to the driver of the car, and the plaintiff was under his protection. Any breach of the contract committed by the driver was a breach committed by the defendant. It is conceded that any injury arising from the mere negligence

of the servant constitutes a breach of the contract. Had the driver, while executing the contract, carelessly and negligently injured the plaintiff, the defendant's liability would not have been doubted. Can it be less a breach of the contract that the injury was intentionally inflicted? An act which would amount to a breach of the carrier's contract, if negligently done, would be equally a breach if done willfully and maliciously. It is immaterial whether a breach of contract results from the negligence or willfulness of the defendant's agent. (*Weed* v. *Panama R. R. Co.*, 17 N. Y. 362.) It is the injury that was suffered by the plaintiff while in the defendant's car, and not the motive which induced it that constitutes the gist of the action. No reason exists for holding a master liable for the negligence of servants in his employment which does not with equal force preclude him from alleging intentional default of the servant as an excuse for not performing a duty which he has undertaken. In the former case the negligence of the servant is that of the master, and that is the ground of the master's liability; in the latter the act of the servant is the act of the master, the motive of the servant making no difference in regard to the legal character of the master's default in doing his duty. In the present case the master had undertaken to transport the plaintiff safely. He was injured while on the defendant's car by the act of the agent to whom the defendant had intrusted the execution of the contract. It is the defendant's failure to carry safely and without injury that constitutes the breach, and it is no defense to say that that failure was the result of the willful or malicious act of the servant.

A rule which should make the carrier liable when the act resulting in the injury was carelessly, but unintentionally done, and exonerate him when the injury was the result of the intentional act of the servant would lead to most absurd results. By such a rule a stage company who should place a lady passenger under the protection of its driver, to be carried over its route, would be liable if, by his unskillful driving, he upset the coach and injured her; but if, taking advantage of his opportunity, he should assault and rob her, the carrier would go scot

free. If the porter of a sleeping car, employed to guard the car while the passengers sleep, should himself fall asleep or, abandoning his post, allow a pickpocket to enter and rob the passengers, the company would be liable; but if the guardian should himself turn pickpocket, and rifle the pockets of the passengers, the company would not be responsible for his acts. The carrier selects his own servants and agents, and, we think, he must be held to warrant that they are trustworthy as well as skillful and competent. Judge Story states the rule as follows: " In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency." (Story on Bailments, §§ 400 and 406 ; *Stokes* v. *Saltonstall*, 13 Peters [U. S.], 181.) " A railway company selects its own agents at its own pleasure, and is bound to employ none except capable, prudent and humane men." (*Penn. R. R. Co.* v. *Vandiver*, 42 Penn. St. 365.)

If the carrier places lady passengers under the protection of libertines who insult or assault them, or male passengers under the protection of drunken ruffians who fall upon and beat them without cause, he should be responsible for the injury. This rule rests upon sound reason, and is abundantly supported by authority.

In *Goddard* v. *The Grand Trunk Railway of Canada* (57 Me. 202 ; 2 Am. Rep. 39), it was held that a common carrier of passengers was responsible for the willful misconduct of his servant toward a passenger, and that a passenger who was assaulted and grossly insulted in a railway car by a brakeman employed on the train had a remedy therefor against the company.

In *Craker* v. *Chicago and Northwestern Railway Company* (36 Wis. 657; 17 Am. Rep. 504) it was held that a master is liable for wrong done by his servant, whether through the negligence or the malice of the latter, in the course of an employment in which the servant is engaged, to perform a duty which the master owes to the person injured; and it was there held that a railroad company is bound to protect the female

passenger on its train from indecent approach or assault, and where a conductor on the company's train makes such an assault on a female passenger the company is liable for compensatory damages. In *Bryant* v. *Rich* (106 Mass. 180 ; 8 Am. Rep. 311), where the plaintiff, a passenger on a steamboat, was assaulted and injured by the steward and some of the table waiters, the defendant as a common carrier was held liable for injury. In *Sherley* v. *Billings* (8 Bush, 147 ; 8 Am. Rep. 451), where a passenger in defendant's boat was assaulted and injured by an officer of the boat, the defendant was held liable. In the *Chicago and Eastern Ill. R. R. Co.* v. *Flexman*, where a brakeman assaulted a passenger, the company was held liable. (103 Ill. 546 ; Albany Law Journal of Nov. 25, 1882, p. 434.) For violations of their rights passengers have their remedy by action on the contract of carriage. To sustain the judgment in this case the counsel for the appellant cites and relies upon the case of *Isaacs* v. *The Third Avenue R. R. Co.* (47 N. Y. 122; 7 Am. Rep. 418). That case was discussed by counsel and determined by this court upon the assumption that the rule of the master's liability for the assault of a servant committed upon a person to whom the master owed no duty was applicable to that case. The mind of the court was not called to the fact that the rule applicable to such a case does not apply to the case of an assault committed upon a passenger by a servant intrusted with the execution of a contract of a common carrier.

The judgment should be reversed and new trial granted, costs to abide the event.

All concur, except RAPALLO, J., absent.

Judgment reversed.