MARY A. TINKER, Appellant, *v.* THE NEW YORK, ONTARIO AND WESTERN RAILROAD COMPANY, Respondent.

*Appeal from a judgment of nonsuit — presumptions in plaintiff's favor — when a servant is engaged in his master's business — objects on a highway calculated to frighten a horse — deposit of timbers on the side of a highway by a railroad company.*

In reviewing a judgment entered upon a nonsuit, the plaintiff is entitled to the benefit of every fact the jury could have found from the evidence, and to every legitimate inference warranted by the proofs.

It cannot be said, as a matter of law, that the employees of a railroad company, whose business it was, apparently, in addition to their other duties, to see that refuse was properly disposed of, are not engaged in their master's business within the scope of their employment when they are employed in placing timbers, previously used by the railroad, upon land in a highway the fee of which is owned by the company.

It is a question of fact for the jury whether weather-beaten timbers (about ten feet long and twelve inches square), lying side by side in a ditch, and partially concealed therein, on the side of a highway near the traveled portion thereof, are calculated to frighten horses of ordinary gentleness, notwithstanding the fact that the railroad owned the fee of the highway.

Whether the employees of such a company had a right to so deposit such timbers temporarily, while engaged in the repair of its road, depends upon whether there was a reasonable necessity for such deposit, and is a question of fact depending upon all the circumstances of the case.

The fact of the company's owning the fee to the part of the highway where such timbers were deposited does not relieve it from liability in the premises.

APPEAL by the plaintiff, Mary A. Tinker, from a judgment of the Supreme Court dismissing the complaint, entered, after a trial at the Chenango Circuit, in the office of the clerk of the county of Chenango on the 23d day of September, 1891.

*George W. Ray* and *George P. Pudney,* for the appellant.

*Edward B. Thomas* and *Howard D. Newton,* for the respondent.

MERWIN, J.:

On the morning of September 6, 1890, the plaintiff, with her husband and two daughters, was riding in a two-horse carriage along a highway that ran nearly east and west, and which the railroad of the defendant intersected at about right angles at a point called Nearing crossing about one mile south of the station at Smyrna. As they proceeded westerly across the railroad track at this crossing and

just after they crossed it, the team became frightened and suddenly turned to the left, running one wheel of the carriage up on the bank at that point, which operated to raise one side of the carriage to such an extent that the plaintiff was thrown out on the road. By the fall she received a somewhat serious injury, and this action is brought to recover damages arising from such injury. Her claim is that the horses were frightened by two sticks of timber that lay in the ditch on the right hand or northerly side of the street, and that the sticks were placed there by the defendant wrongfully and negligently, and were of such a character as likely to frighten horses of ordinary gentleness. The defendant claims that the timbers were not placed there by it or by its servants in the course of its business, and that if they were, still the defendant was the owner of the land where they lay, and the act was not a negligent one, and, therefore, the defendant was not liable.

In reviewing a judgment entered upon a nonsuit, the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence given and to every legitimate inference warranted by the proofs. (*McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389.)

The timbers were each about ten feet long and twelve inches square, and were about twenty feet westerly of the railroad track, and lay side by side in a ditch on the northerly side of the highway, and about ten feet from the center of the traveled part, and about fifteen or twenty feet from the fence on the northerly side of the highway. The ditch where they lay was from one to two feet deep. They were weather beaten and dark colored, one witness saying : " Not necessarily black, not any more than ordinary weather-beaten sticks of timber would be   *   *   *   there might have been some oil and engine grease on them," and another witness says : " They were dark colored, pretty nearly black with oil and stuff on them, nearly black." The place where they lay was within the eighty feet taken by the defendant for the uses of its road, and at that point the defendant owned the fee of the eighty feet, subject, of course, to the highway. The timbers were placed where they were during the afternoon of September fourth, by the employees of the defendant. Upon that day the section men of the defendant who had charge of the section that included this crossing took out the cattle guards upon each side of the crossing and put in new ones. The

timbers taken out on the north side were put on the company's side of the fence, that is, outside of the highway. The timbers on the south side of the crossing were taken out onto the highway, at first being laid on the south side of the highway, one on each side of the railroad track and near to it, and then, after the cattle guard was fixed so that trains could pass over, they were removed by the section men to the place where they were at the time of the plaintiff's injury. This removal was by the direction of one of the section men, a brother of the foreman, who said he wanted them for wood. They remained there until the second day after the accident, when they were thrown over the fence onto the company's land by the same section men, including the foreman, and there they remained until the summer following.

The first question that naturally arises is whether the defendant is responsible for the timbers being placed at the point where they were at the time of the accident. They were there on the company's land, and so, in a measure at least, in its custody. They were placed there by its employees, whose business it was apparently not only to properly fix the cattle guard, but to see that the refuse was properly disposed of. In *Phil. & Read. R. R. Co.* v. *Derby* (14 How. [U. S.] 482, 486), it is said : "The rule of '*respondeat superior*,' or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent or deceitful. If it be done in the course of his employment, the master is liable, and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment." In *Quinn* v. *Power* (87 N. Y. 537), the rule is said to be that the master is liable for the negligence or misfeasance of the servant while the latter is acting in the master's business and within the scope of the servant's employment, and a violation of the master's instructions or a departure from the strict line of duty to him from the servant does not necessarily make the latter alone liable. (P. 540.) In *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.* (120 N. Y. 117, 124), which was an action to recover damages for the tortious act of the porter of the sleeping car, it is

said that the question in such cases whether the servant was engaged in the performance of his duties as a servant of the company is for the determination of the jury. The case of *Mulligan* v. *N. Y. & Rockaway B. R. Co.* (129 N. Y. 506), cited by defendant's counsel, is materially different from the case in hand. In *Pittsburgh, F. W. & C. Railway Co.* v. *Maurer* (21 Ohio St. 421), the question whether the servant was in the course of his employment was left to the jury. In *Dells* v. *Stollenwerk* (78 Wis. 339), the acts of the servants were after they had quit work for the day.

In the present case it should not, we think, be said as matter of law that the employees of the company were not then engaged in their master's business and within the scope of their employment. The foreman then in charge represented there the company, and the timbers were left on the side of the road with his assent, as it might be found, or by his direction, while they all were engaged in the master's business. They remained on the company's land, and the knowledge of the foreman that they were so left was imputable to the company. If so, the question of notice thereafter to the company was not important. (*Wilson* v. *City of Troy*, 135 N. Y. 102; *Dunsbach* v. *Hollister*, 49 Hun, 352; affd., 132 N. Y. 602.)

Assuming, then that the defendant may be chargeable with the situation of the timbers, we then come to the question as to what responsibilities might arise therefrom.

An object in a public street which is of such a form or character that it is calculated to frighten horses of ordinary gentleness, is an obstruction in the nature of a nuisance, and anyone who so places or maintains it is ordinarily liable for the consequences likely to arise. (*Stewart* v. *Porter M.fg. Co.*, 13 N. Y. St. Repr. 220; *Eggleston* v. *Columbia Turnpike Road*, 18 Hun, 148, and cases cited; Wood on Nuisances, §§ 295, 297; 1 Thomp. on Neg. 349; Whart. on Neg. § 983.)

Whether or not the timbers in question, by reason of their form and character, their situation near the traveled part of the highway and partially concealed in the ditch, were calculated to frighten horses of ordinary gentleness was, we think, a question for the jury. It was a matter for inference in regard to which there was room for fair difference of opinion among intelligent men. (*Wolfkiel* v. *R. R. Co.*, 38 N. Y. 49.) In a note to *Morse* v. *Richmond* (41 Vt. 435,

446), Judge REDFIELD says: "The case of *Chamberlain* v. *Enfield* (43 N. H. 356), seems to us to place the question upon its true basis, that it must be regarded as a question of fact for the jury, whether an object outside of the traveled portion of the highway is a defect or obstruction to its safe use, by reason of its liability to frighten horses. There is no valid reason apparent to us why this question may not as safely be intrusted to juries under proper limitations, to be defined and fixed by the courts, as any other questions of fact arising in this class of cases." The testimony shows that the horses were in fact frightened by the timbers, and the question whether they were ordinarily gentle was a question of fact. There was evidence tending to show that they were.

But the defendant claims that, assuming the timbers were placed where they were by its employees in the course of their employment, it was done while they were properly engaged in the repair of the cattle guards, and they had a right to temporarily deposit the sticks there. That, however, depends upon whether there was a reasonable necessity for such deposit, and that was a question of fact. (*Callanan* v. *Gilman*, 107 N. Y. 360.) In *Flynn* v. *Taylor* (127 N. Y. 596), it is said the obstruction must be reasonably necessary for the transaction of business, and it must not unreasonably interfere with the rights of the public, and whether a particular use of a street is an unwarrantable use or not, is a question of fact depending on all the circumstances of the case.

The fact that the defendant was the owner of the fee does not relieve it from liability, if the use was not reasonable and necessary. (*Dygert* v. *Schenck*, 23 Wend. 446; *Babbage* v. *Powers*, 130 N. Y. 281; Wood on Nuisances, § 297.) Even if the deposit in the street was reasonably necessary, a question might arise whether the defendant in the exercise of its right was negligent. (See *Piollet* v. *Simmers*, 106 Penn. St. 105.)

The foregoing considerations lead to the conclusion that the case should have been submitted to the jury, and that the nonsuit was improperly granted.

HARDIN, P. J., concurred; PARKER, J., not sitting.

Judgment reversed and a new trial ordered, costs to abide the event.