business. No one testified that he had ever heard any person complain, before this accident, that the elevator was unsafe for the purpose that it was intended to be used. It could hardly be expected that the defendant could have seen a danger that was not visible to any one, not even to those who inspected the elevator daily, or to those whose lives were most exposed in operating it. The mere fact that this accident occurred in the manner testified to by plaintiff's witnesses was not sufficient to authorize an inference of negligence on the part of the defendant. It is for the plaintiff to show how the accident occurred, and to prove that it was caused by the negligence of the defendant. Chief Judge Ruger, in Dobbins v. Brown, 119 N. Y. 192, 23 N. E. 537, says:

"The degree of care required of an employer in protecting his employés from injury has been stated to be the adoption of all reasonable means and precautions to provide for the safety of his servants while in the performance of their work. The omission to use such care has been held to be negligence rendering the employer liable for damages occasioned by it; but such neglect must be proved, either by direct evidence or the proof of facts from which the inference of negligence can be legitimately drawn by the jury. It cannot be supported by mere conjecture or surmise, but must be made referable by the proof to some specific cause or defect. It has been held that the mere fact that an accident occurred, which caused an injury, is not generally of itself sufficient to authorize an inference of negligence against a defendant."

We think there was no evidence upon which the jury could properly find that the defendant was guilty of any negligence in furnishing the elevator or its equipment, or in providing for its proper inspection from time to time as was necessary, in order to guard against accidents. Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483; Hart v. Naumburg, 123 N. Y. 641, 25 N. E. 385. The motion for a nonsuit therefore should have been granted.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLENNAN, J., concurs. SPRING, WILLIAMS, and HISCOCK, JJ., concur in result.

---

(72 App. Div. 116.)

McLEOD v. NEW YORK, C. & ST. L. R. CO.

(Supreme Court, Appellate Division, First Department. May 16, 1902.)

CARRIERS—DETENTION OF PASSENGER—BREACH OF DUTY AS CARRIER—QUESTIONS FOR JURY.

Where, in an action against a carrier for unlawful arrest and detention, rendering plaintiff unable to fulfill professional engagements previously made, it appears that plaintiff was accused by a detective in defendant's employ of theft of money from a fellow passenger, and over his protest, and after appealing to the conductor, was removed from the train and confined in jail for several days, when he was discharged, a question is presented for the jury whether or not the company was guilty of a breach of duty as a carrier to transport plaintiff to his destination without wrongful detention, and it was error to dismiss the complaint.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Andrew McLeod against the New York, Chicago & St. Louis Railroad Company. From a judgment in favor of defendant and an order denying a motion for a new trial, plaintiff appeals. Reversed.

The action was brought to recover for the unlawful arrest and detention of plaintiff by defendant's servant, a railroad detective, while he was a passenger on its train from Chicago to New York. The plaintiff is an actor, and was on his way East to keep professional engagements previously made, and which he was unable to fulfill because of his arrest and detention. The situation, as described by plaintiff's witnesses, at the close of whose testimony the complaint was dismissed, was as follows: When the train carrying the plaintiff, a friend of his named Aldrich, a railroad detective named Wilkinson, and an old gentleman among its passengers reached Ft. Wayne, Ind., there was a stop of about five or ten minutes for luncheon, and the plaintiff left the smoking car, got a cup of coffee, and then went to the baggage car to see if his trunks had been put aboard. He then returned to the smoker, and Aldrich informed him that the old gentleman had been cheated out of some money. He went to the latter and inquired about it, and the old gentleman told him that a man had asked him for a $20 bill in exchange for $1 bills, and he gave it to him, and the man after counting the bills said there were but $19, and he would go to the other car for the other dollar, which he did, carrying all the money, and never returned, and he did not know who the stranger was. Aldrich testified that he remained in the car at Ft. Wayne reading a book, and that after plaintiff had gone out a man passed his seat, saying, "That is all right; I will be right back,"—and a little later he learned that the old gentleman who was sitting ahead of him had been robbed. When the train pulled out of Ft. Wayne the plaintiff, as he was passing through the car, was accosted by Wilkinson, who asked if he had been speaking to the old gentleman, and, upon replying that he had, was requested to go to him, which he did, and Wilkinson then said to the old gentleman, "This is the man that took your money, isn't it?" and the answer was, "I guess it is." Aldrich says the old gentleman first replied, "I don't know." Wilkinson then told plaintiff he was a detective, and showed his badge, and said he would search him, and plaintiff appealed to the conductor for protection, who said that Wilkinson was a detective for the road and had more authority than he had, and told the latter to go ahead. The detective's search disclosed no $20 bill. Wilkinson then said he saw plaintiff take the money, which plaintiff denied, saying he knew nothing of it, and had been at luncheon during the time. The detective then demanded the $20, saying that if it was returned nothing further would be done, and upon plaintiff's refusal to raise the money from his friends said he would take him from the train at Fostoria, Ohio, at which place plaintiff again appealed to the conductor, who replied: "That is all right. Mr. Wilkinson knows his business. He is an officer of this road, and the company will stand good for anything he does." The plaintiff, together with his musical instruments, including a cornet and banjo, were taken from the train by Wilkinson at Fostoria, Ohio, and by the latter's orders was confined in jail, and the next morning Wilkinson testified against him at an examination, and he was then sent to Tiffin, Ohio, where he remained for nine days awaiting requisition papers, when proceedings against him ceased, and he was discharged. Aldrich further testified that the baggage man on the train had come into the smoker, and told the detective that the plaintiff had inquired about his baggage at Ft. Wayne; and that in Cleveland he (Aldrich) went to see the superintendent at the defendant's office there, and told him what had occurred on the train, and a day or so later saw him again, and he said: "Our detective there seems to think he has the right man. * * * I do not see what is to be done." The detective Wilkinson testified that he was a special officer in the employ of the company "to look after car thieves," and that when such a thing occurred he investigated it when reported to him; that he did detective work "all along the road"; that he did not often

arrest persons accused upon trains; that he never had any specific instructions, but he looked "after the company's interests in robberies and burglaries and such as that," but was not instructed to ride along and make observations as to whether any theft was committed on trains, although he did that; that after the arrest he reported to the company, and that he obtained a lawyer in the road's employ at Tiffin, Ohio. At the conclusion of this testimony motion to dismiss the complaint was granted, and from judgment so entered plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Louis J. Vorhaus, for appellant.

Ira D. Place, for respondent.

O'BRIEN, J.   The learned trial judge in dismissing the complaint took the ground that Wilkinson in charging the plaintiff with the crime, in removing him from the train, and in subsequently placing him under arrest was not acting within the scope of his employment; and the argument employed in reaching this conclusion, as shown by the oral opinion delivered at the close of the case, proceeded upon the theory that the arrest and imprisonment were not for the purpose of protecting the interests and property of the defendant. As illustrative of what acts of the employé of a corporation are within and what acts are without the scope of his employment, we have in this state the two cases of Mulligan v. Railway Co., 129 N. Y. 506, 29 N. E. 952, 14 L. R. A. 791, 26 Am. St. Rep. 539, and Palmeri v. Railway Co., 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632, upon the former of which the trial court mainly relied in dismissing the complaint. We deem it unnecessary to point out the distinction that, in our opinion, exists between the Mulligan Case and the one at bar, thinking, as we do, that the liability of the defendant is to be determined by another and different principle, which, upon the complaint and the proof, the plaintiff could invoke. Having, as we think, made out a prima facie case, he was entitled to have a jury determine whether the damages did or did not result from a breach of the defendant's general duty as a common carrier to convey him safely and without molestation to his destination.

In Wood, Mast. & Serv. p. 641, the duty resting upon a common carrier is thus expressed:

"A carrier of passengers for hire, as a railroad company, by the sale of a ticket, or the receipt of the price for transportation from one point to another, expressly contracts to carry such person to the point covered by the contract. In addition to that the law impliedly raises a contract on his part to carry such person safely, * * * to treat him respectfully, and protect him, so far as due care on his part can do so, from injury from other persons riding by the same conveyance."

In Stewart v. Railroad Co., 90 N. Y. 588, 43 Am. Rep. 185, the court says:

"By the defendant's contract with the plaintiff it had undertaken to carry him safely and to treat him respectfully; and, while a common carrier does not undertake to insure against injury from every possible danger, he does undertake to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger."

In Goddard v. Railway Co., 57 Me. 202, 2 Am. Rep. 39, it is said that:

"The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully, and if he intrusts this duty to his servants the law holds him responsible for the manner in which they execute the trust."

The able review of authorities which follows in that case supports the conclusion reached that the rule relieving a master from liability for an injury caused by his servant, when not acting within the scope of his employment, does not apply, even though it be maliciously inflicted, as between a common carrier of passengers and a passenger.

In Dwinelle v. Railroad Co., 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611, Stewart v. Railroad Co., supra, and other cases were cited with approval, and it was therein said:

"These and numerous other cases hold that, no matter what the motive is which incites the servant of the carrier to commit an unlawful or improper act toward the passenger during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural and legitimate consequences."

See, also, Wells v. Railroad Co., 25 App. Div. 365, 49 N. Y. Supp. 510.

In accordance with these authorities, and upon the plaintiff's evidence, it was for the jury to determine whether the act of Wilkinson in removing the plaintiff from the train and the conductor's sanction after he was appealed to by the plaintiff for protection against the removal constituted a violation of the defendant's contract to carry the plaintiff safely to New York City, and, if the jury so found, then it would follow that for the plaintiff's subsequent arrest and detention, which was the direct and proximate result of such breach of duty, the defendant would be liable.

Regard being had to the obligation imposed upon the defendant of conveying the plaintiff safely to the city of New York, it was bound not only to protect him, so far as practicable, while being so conveyed, from violence committed by strangers and co-passengers, but it was bound to protect him absolutely against the misconduct of its own servants who were employed to perform its obligation or contract of carriage. It therefore becomes immaterial whether Wilkinson or the conductor were acting within the scope of their employment, sufficient appearing to render it a question for the jury to determine whether the duty resting upon the defendant was properly discharged. Had Wilkinson been an entire stranger instead of an employé of the road, and had he, with the assent and with the concurrence or by the direction of the conductor, removed the plaintiff from the train, the same question would be presented. Where, however, it is not a stranger but an employé of the road, whether he be a detective or a brakeman or a fireman, who interferes with the passenger's right to be carried safely and peaceably on his journey, the additional circumstance that he is an employé of the carrier but accentuates the injury that is done to the passenger.

The extent of the duty to protect a passenger against strangers

and co-passengers, as distinguished from servants of the carrier, is clearly expressed in the Stewart Case, supra, as follows:

"A common carrier is bound, so far as practicable, to protect his passengers, while being conveyed, from violence committed by strangers and co-passengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract."

In our view, therefore, the plaintiff having presented sufficient evidence entitling him to go to the jury upon the question of whether or not the defendant was guilty of a breach of the duty it had assumed of carrying him safely and without wrongful detention to his destination, it was error to dismiss the complaint; and accordingly the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, McLAUGHLIN, and HATCH, JJ., concur. VAN BRUNT, P. J., dissents.