(83 App. Div. 73.)

DE FELICE v. COMPAGNIE FRANCAISE DE NAVIGATION A VAPEUR, CYPRIEN FABRE & CIE.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. CARRIERS—LOSS OF BAGGAGE—NEGLIGENCE—EVIDENCE.
    The second captain of a vessel, who had charge of the baggage, at first objected to plaintiff's valise being on deck, but subsequently assented to its remaining there. Plaintiff testified that there was ill-feeling on the part of such captain toward plaintiff, and that he gave plaintiff a push, and told him to go to hell, after the valise had disappeared and plaintiff made a demand for its restoration. Three disinterested witnesses testified that the valise was thrown overboard by persons in the employ of the ship by the direction of such captain before the arrival of the steamer at port, which he denied. *Held*, that a judgment for plaintiff would not be reversed, as against the evidence, on the ground that the contention that the valise was thrown overboard at the captain's orders was incredible.

**2. SAME—GOODS STORED ON DECK.**
  That a steamship company permitted a passenger to retain control of his valise, and store same on deck, did not exempt it from liability for the misconduct of its servant in ordering the same to be thrown overboard.

Appeal from Trial Term, Kings County.

Action by Carlo De Felice against Compagnie Francaise De Navigation a Vapeur, Cyprien Fabre & Cie. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

E. G. Benedict, for appellant.

Frederick W. Gahrmann, for respondent.

WILLARD BARTLETT, J. The defendant is a common carrier, running a line of steamships between Italy and the United States. The plaintiff, who is a dentist, was a passenger on the defendant's steamer Patria, which left Naples for New York on the 16th day of October, 1900. Among his baggage was a valise containing dental instruments and other articles appertaining to his pursuit. With the sanction of the chief officer of the vessel, who is denominated the "second captain" in the record, and who had general charge of the baggage of passengers, the plaintiff was allowed to keep this valise on deck under the afterhouse, in order that he might have access to its contents. It remained in this place until the day before the steamer reached New York, when it disappeared. Up to this point there is no dispute as to the facts of the case. The real issue between the parties is as to the cause of the disappearance of the valise. According to three witnesses for the plaintiff, who appear to have no bias or interest in the event of the action, the valise was thrown overboard by a person or persons in the employ of the ship, and in the presence and by the direction of the second captain, the night before the arrival of the steamer at this port. The second captain positively denies the truth of the testimony of these witnesses to the effect that he caused the valise to be thrown overboard, and it is earnestly insisted in behalf of the appellant that the story is so incredible that the verdict ought to be regarded as against the evidence. In my opinion, however, we should not be justified in interfering with the judgment on this ground. The second captain appears to have objected to the presence of the valise on the deck in the first instance, although he subsequently assented to its remaining there; and there is testimony indicating the existence of ill-feeling on his part toward the plaintiff, who swears that "he gave me a push, and told me to go to hell," after the valise had disappeared and the plaintiff made a demand for its restoration. This testimony, in connection with that of the three witnesses whom I have mentioned to the fact of having actually seen the baggage thrown into the sea by a person or persons in the presence of the second captain, who were apparently acting in accordance with his directions, is enough to warrant the inference that the officer was prompted by some feeling of spite or irritation against the plaintiff to commit the act of misconduct with which he is charged.

· Even if the act was thus committed, the defendant corporation was liable for its consequences. A common carrier of passengers undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract. Stewart v. Brooklyn & Crosstown R. R. Co., 90 N. Y. 588, 43 Am. Rep. 185. This obligation is not limited only to protection from personal assault at the hands of the carrier's servants, as in the case cited. Precisely how far it extends may be difficult to state with accuracy; but I am of opinion that it is sufficiently broad to protect a passenger on an ocean steamer from the violent seizure of his personal baggage by one of the steamer's officers, and the flinging of such baggage into the sea.

The case is quite different from Cohen v. Frost, 2 Duer, 335, 340, where the trunk of a steerage passenger had been taken by him into the steerage, placed under his bed, and fastened with ropes to his berth —all the circumstances indicating, in the opinion of the court, that he relied upon his own care and vigilance to protect him against its loss. The ropes were cut at night, and the trunk was stolen by some person unknown, and it was held that the passenger could not recover against the vessel owners, because the trunk was never placed in their charge or custody as common carriers. The case would be more analogous to that before us if it had appeared that an officer of the ship had entered the steerage, withdrawn the trunk from under the plaintiff's berth, and cast it into the ocean.

No doubt, in the case at bar, the plaintiff, by electing to keep his valise on the ship's deck, assumed the risk of its being washed overboard by the waves or of its sliding into the sea in consequence of the motion of the vessel. It may well be that under the circumstances his action relieved the steamship company of all responsibility for mere negligence in respect to this piece of baggage. As a common carrier, however, it still remained bound by its undertaking to protect the passenger against any active misconduct on the part of its servants; and I think it clear, as I have already intimated, that the act of the second captain in throwing the valise overboard constituted such misconduct. I advise an affirmance of this judgment.

Judgment and order unanimously affirmed, with costs. All concur.